The opinion of the court was delivered by
McEnery, J. F. A.
Daughtry, the husband of plaintiff, was a mem - ber of the order of the Knights of Pythias, and belonged to the endowment rank.
*1204 He was found dead in a cell of the jail at Shreveport, La. The widow instituted this suit for the amount of the insurance on the life of her deceased husband.
The defence is that the deceased took his own life, and that' the policy was forfeited by the laws of the order,
The facts recited in the record show that the deceased took his own life. There is no theory that can be advanced under the facts that could lead to a doubt of death by suicide. There is no basis for a theory that the death of the deceased was caused by accident, or that he met his death at the hands of others.
In Leman vs. Life Insurance Company, 46 An. 1186, we held that “when circumstantial evidence alone is relied on to establish suicide, it is at least within bounds to say the evidence must exclude with reasonable certainty any other cause of death.” The evidence is such that no other conclusion can be arrived at than that the deceased voluntarily took his own life.
The plaintiff contends that if it be found that the husband committed suicide the policy is nevertheless due and payable, because when the certificate of membership of the endowment rank was issued to him it contained no provision against death by .suicide noi* did the laws of the order exclude self-destruction from the risks under the policy of insurance stipulated in the certificate; that the legislation thereafter forfeiting the policy on account of suicide could not affect a policy or certificate of membership issued prior thereto; that such legislation was ex post facto, and finally, that the legislation did not bear on the contract, but only as to the fitness and qualification of membership, and related exclusively to the discipline of the order.
Orders like the defendant association have multiplied in recent years. Tney are organized for the mutual benefit of the members, taking care of the sick and afflicted in life and providing for the family of the deceased member after death. Rules and regulations, a constitution and by-laws are enacted for their government. Every member who joins one of these orders does so with a full knowledge of its laws and usages. He is bound by the constitution and by-laws, and subjects himself to their discipline in order to receive the-benefits conferred by the order. There can be no law or regulation enacted after his membership that would destroy the benefit agreed to be conferred upon him by the laws and regulations in force at the *1205 time he joined the order. His contract of insurance could not be abridged or violated without his consent. But provision is made in the constitution for its amendment, and we see no reason why the members of an association of this kind can not, like the body politic, change its laws, enact new ones and discipline its members by police regulations.
In both cases the members, by their vote, participate in the change by the rule of the majority. In neither case can vested rights be destroyed. The vested right that the deceased had was for his family to receive the sum of three thousand dollars, provided he complied with the laws of the order. There was no vested right in selecting the mode and manner of his death. Had there been no subsequent legislation there would have been no prohibition to the payment. But the order had a right, independent of any stipulation or agreement, to say that no member should take his own life and receive for his family the benefit of the life policy. It was a matter of legislation in which each member, through representation, assented. It was a police regulation in the interest of the discipline and welfare of the endowment rank. We understand from the documents accompanying the transcript that payments of policies on account of suicides had become so frequent that the endowment fund was endangered. . Suppose, in the State of Louisiana, persons should insure themselves and commit suicide, in order that the policy should go to the beneficiaries, and it should become so frequent as to endanger society, would any one doubt the wisdom or the validity of a law which should say that no existing policy, or those thereafter issued, should be paid if the policy holder committed suicide? So in this case, the order of the Knights of Pythias applied a remedy, by declaring the forfeiture of existing and future certificates of membership in the endowment. rank on account of the self-destruction of the holder of the certificate.
But in this case, the holder of the certificate was bound by the stipulations in it. When issued to the husband of plaintiff it contained this agreement: “and in consideration of the payment hereafter to said endowment rank of all monthly payments as required and the full compliance with all the laws governing this rank now in force,, or that may hereafter be enacted, and shall be in good standing under said laws,” etc.
In the certificate it is stated that if any of the requirements of the *1206 laws in force governing the endowment rank shall be violated, the Supreme Lodge of the order shall not be liable for the amount of the policy.
The certificate covers both the laws which may thereafter be enacted, governing the endowment rank, and the good standing of members under the existing regulations.
After this certificate was issued to F. A. Daughtry, a law was enacted by the proper authority, and approved by the Supreme Lodge, forfeiting the policy on account of suicide. Any law enacted in pursuance of this agreement is the voluntary consent of the members of the order, made for their mutual benefit and by their proper representatives.
In the case of Supreme Commandery Knights Golden Rule vs. Ainsworth, 71 Ala. 436, the facts were almost identical with those in the instant case. The syllabus of the case reads: “ Under a contract of life insurance issued by a mutual company, conditioned to be subject to any law thereafter to be enacted, the insured is bound by a subsequent by-law forfeiting such policies when the insured should die by his own hands, sane or insane.” This case is well supported by sound reasoning and abundant authority, and we accept the doctrine announced.
It is ordered that the jndgment appealed from be annulled, avoided and reversed, and it is now ordered that plaintiff’s demand be rejected with costs.