HUGHES, Respondent, vs. THE WISCONSIN ODD FELLOWS' MU-
TUAL LIFE INSURANCE COMPANY, Appellant.

*December 15, 1897 — January 11, 1898.*

*Mutual life insurance: Power of directors to adopt by-laws: Change in
by-laws modifying contract: Forfeiture: Waiver.*

1. Where the act incorporating a mutual life insurance company (sec. 4, ch. 43, P. & L. Laws of 1869) conferred upon the board of directors power to enact, repeal, alter, or amend all by-laws, rules, and regulations for the management of the affairs of this company not inconsistent with the provisions of this charter, nor contrary to the constitution and laws of the United States, that body had power to pass a by-law providing that certificates of membership should be rendered absolutely void in case the insured came to his death by his own hand in any manner other than by accident.

2. Where a member of a mutual life insurance company stipulated in his application, which formed part of the contract of insurance, that he would "conform in all respects to the by-laws, rules, and regulations of this company now in force, *or which may be hereafter adopted* by the same or its board of directors," he and his beneficiaries are as effectually bound by an amendment to the by-laws, adopted by the board of directors after the policy took effect, avoiding it in case the insured committed suicide, as if such by-law had been in force at the time he became a member. *Morrison v. Wis. O. F. M. L. Ins. Co.* 59 Wis. 162, distinguished.

3. A mutual life insurance company did not waive its right to insist upon a forfeiture by accepting and retaining proofs of loss and paying two other policies, without objection, and arranging with the beneficiary, through its secretary, for her to attend meetings of the board of directors at which the matter of her claim was to be considered, notwithstanding she incurred some expense in attending such meetings.

4. The charter and by-laws of a mutual insurance company provided for assessments on members whenever, in the opinion of the secretary, the policy fund was insufficient to pay outstanding unpaid losses. Notice of an assessment to replenish such fund stated that the company had received notice and proof of death of plaintiff's insured and eleven others, specifying the amount for which each was insured. It was not shown how much, if any, of this assessment was collected, or that any specific part of it was paid,

collected, or appropriated to pay the plaintiff's claim. *Held*, that such replenishing of the policy fund did not involve any admission of liability on account of plaintiff's claim, or any waiver of a forfeiture of the policy under which she claimed, by reason of the suicide of the insured.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

This action was brought upon a contract of life insurance, against the defendant, a corporation organized under ch. 43, P. & L. Laws of 1869, and acts amendatory thereof. It was organized to insure the lives of its members upon a mutual plan, similar to that generally adopted by so-called mutual benefit societies. Plaintiff's husband, B. B. Hughes, became a member of the company in 1876, and was insured in the sum of $1,000. He afterwards increased his insurance to the sum of $3,000 by separate contracts, the last $1,000 having been taken in 1881. In 1883 the plan of insurance was modified in some respects, and new certificates were issued in lieu of those previously held by members, including those held by Hughes, which new certificates were, however, based upon the former applications.

At the time of effecting the insurance for which this action was brought the plaintiff's husband signed and presented to the company an application in writing, dated June 11, 1881, in the form of questions and answers, one of which is as follows: "(14) Will you make punctual payment of all assessments for which you may become liable, and conform in all respects to the by-laws, rules, and regulations of this company now in force, or which may hereafter be adopted by the same or its board of directors? Yes." At that time there was no provision in the charter or by-laws of the company for forfeiting or avoiding its contracts in case of suicide by the insured; but in February, 1886, the board of directors of the company duly adopted the following by-law: "Every certificate of membership shall be and become wholly

forfeited and utterly void and of no binding force and effect whatever upon the company, . . . if the insured shall ·die . . . by suicide, felonious or otherwise, sane or in- ·sane, or by his own hand, in any manner whatever, or under any circumstances other than by accident; . . . and no ·money shall be paid upon any certificate of membership thus ·forfeited." Section 4 of the charter, in force at the time of effecting the contract in suit, provides that "the directors .are empowered to enact, repeal, alter, or amend all by-laws, rules, and regulations for the management of the affairs of this company not inconsistent with the provisions of this ·charter, or contrary to the constitution and laws of the United States or of this state." The original charter con- tained this provision, and it was retained therein and in the amended or revised charter.

The insured died by his own hand, December 7, 1894; all of the insurance held by him in the defendant company being then in force. The company paid $2,000 thereof, but re- fused to pay the $1,000 effected in 1881, for the recovery of which this action was brought. The contention of the com- pany was that, under the provisions of its charter and the stipulations contained in the application for membership, it had the right to amend its by-laws so as to avoid certificates ·on account of suicide, and that the insured was bound by ·such by-laws, though enacted after he became a member. The trial court ruled that the company did not possess this :power, and that members were not bound by by-laws enacted :subsequently to their becoming members, and at the con- ·clusion of the testimony directed a verdict for the plaintiff for the amount claimed, upon which judgment was rendered for the plaintiff, and from which the defendant appealed.

For the appellant there was a brief by *L. H. Mead* and *C. E. Estabrook*, attorneys, and *Quarles, Spence & Quarles*, ·of counsel, and oral argument by *George Lines.* They argued, among other things, that where, in any of the instru-

ments forming the contract for insurance in a mutual benefit society, the insured agrees to be bound by laws passed after he becomes a member, such stipulation is as valid and binding as any other part of the contract. *Supreme Commandery Knights of Golden Rule v. Ainsworth,* 71 Ala. 436, 46 Am. Rep. 332; *Supreme Lodge K. of P. v. LaMalta,* 95 Tenn. 157, 30 L. R. A. 838; *Daughtry v. Knights of Pythias,* 48 La. Ann. 1203; *Stohr v. San Francisco M. F. Soc.* 82 Cal. 557; *Fugure v. Mut. Soc. of St. Joseph,* 46 Vt. 362; *Poultney v. Bachman,* 31 Hun, 49; *May v. N. Y. S. R. F. Soc.* 14 Daly, 394; Niblack, Ben. Soc. & Acc. Ins. § 26; 1 Biddle, Ins. § 54; *McCoy v. N. W. Mut. R. Asso.* 92 Wis. 577.

For the respondent there was a brief by *Bashford, Aylward & Spensley,* and oral argument by *R. M. Bashford.* They contended, *inter alia,* that the forfeiture was waived as a matter of law by the appellant by calling for proofs and requiring the respondent to incur expense in connection with the claim, after it had full knowledge of the cause of death; and by collecting assessments to pay the loss. *Kidder v. Knights Templars & M. L. I. Co.* 94 Wis. 538; *Seibel v. N. W. Mut. R. Asso.* id. 253; *Pool v. Milwaukee M. Ins. Co.* 91 id. 530; *Erdmann v. Mut. Ins. Co. O. H. S.* 44 id. 376; *Cannon v. Home Ins. Co.* 53 id. 593; *Jerdee v. Cottage Grove F. Ins. Co.* 75 id. 345; *N. W. Mut. L. Ins. Co. v. Germania F. Ins. Co.* 40 id. 446. Appellant is conclusively estopped to deny liability after collecting assessments to pay the loss. *Hurd v. Doty,* 86 Wis. 1, 14; *Bullwinkel v. Guttenberg,* 17 id. 583; *Lafebre v. Board of Education of Superior,* 81 id. 660, 664; *Kiewert v. Rindskopf,* 46 id. 481; *Cairns v. O'Bleness,* 40 id. 469; *La Pointe v. Ashland,* 47 id. 251; *Casper v. State,* 47 id. 535; *Remington v. Ward,* 78 id. 539; *Heckman v. Swartz,* 50 id. 267; *Wells v. McGeoch,* 71 id. 196; *Gillmore v. Roberts,* 79 id. 450.

PINNEY, J. 1. The principal question presented by this appeal is whether the assured, Hughes, was bound by the

by-law adopted by the board of directors of the defendant
company in February, 1886, after the contract of insurance
had been perfected, by which "every certificate of member-
ship shall be and become wholly forfeited and utterly void,
and of no binding force and effect whatever upon the com-
pany, . . . if the insured shall die . . . by suicide,
felonious or otherwise, sane or insane, or by his or her own
hand, in any manner whatever, or under any circumstances
other than by accident; . . . and no money shall be
paid upon any certificate of membership thus forfeited."
It is contended that this by-law was void for want of au-
thority on the part of the directors to adopt it, and that the
assured never in any manner consented to this by-law.   In
2 Cook, Stock, § 700a, it is said that: "By-laws are to be
made by the stockholders in meeting assembled. . . .
The directors have no inherent power to make by-laws.
But the stockholders may delegate to the directors the
power to make by-laws.   Frequently the charter confers
this power on the directors."   1 Beach, Priv. Corp. § 311;
Angell & A. Corp. § 327.

The charter of the defendant corporation has always pro-
vided, in respect to the defendant company, ever since it
was organized, that the directors are empowered to enact,
repeal, alter, or amend all by-laws, rules, and regulations
for the management of the affairs of this company not in-
consistent with the provisions of this charter, nor contrary
to the constitution and laws of the United States.   Orig-
inal charter (P. & L. Laws of 1869), ch. 43, sec. 4.   Sec. 6
of the revised charter (ch. 1, Laws of 1887) provides that
"the board of directors shall have power and authority
. . . to enact, amend, alter, or repeal all by-laws, rules,
and regulations for the management of the affairs of the
company not inconsistent with the constitution or laws of
the United States or of this state; and generally to man-
age and control the business and affairs of the company."

But for this provision of the charter, the power to pass by-laws would doubtless be vested solely in the stockholders. But it is very clear, we think, that the power to pass by-laws was by the charter expressly delegated to and vested in the directors of the company, and we cannot doubt that it had power to pass the by-law in question.

The assured, in his application for membership, stipulated, in his answer to question 14 of his application, to " conform in all respects to the by-laws, rules, and regulations of the company now in force, *or which may be hereafter adopted* by the same *or its board of directors.*" The provisions of the charter, and the by-laws and regulations adopted pursuant thereto by its board of directors, and the application of the assured for membership, together with his certificate of membership, all enter into and constitute parts of the contract of insurance. 1 Bacon, Ben. Soc. §§ 161, 181, and cases cited; Niblack, Ben. Soc. & Acc. Ins. (2d ed.), 136. The by-law in question rested on the power delegated by the charter to the directors to pass by-laws and regulations, and upon the stipulation of the member " to conform in all respects to the by-laws, rules, and regulations of the company then in force, or which might be thereafter adopted by the same or its board of directors." The subsequent by-law relied on by the company to defeat a recovery may be fairly said to have been consented to by the insured. He stipulated, in substance, to be bound by the action of the corporation at large, or of its board of directors, in respect to its by-laws, rules, and regulations. This was the effect of his contract, and, so far from being violative of the provisions of the contract, it is in accordance therewith, and with the consent of the assured contained in his application. He and his beneficiary stood in like condition as to the rights and interests represented by his membership in the company as a member of the civil state, having, as a condition of the benefits and advantages of membership, submitted to be

bound as such member by the action of the proper legislative authority of the state or company. It being conceded that "the assured died by his own hand," the act by which he took his life executed at once the provision of the by-law in respect to his certificate of membership in the company, and rendered the certificate thereof *eo instante* absolutely void, without any other act, proceeding, or ceremony whatever. This was held, under like circumstances, in the case of *Schmidt v. Supreme Tent Knights of Maccabees*, 97 Wis. 528, in respect to the fact that the assured in that case had engaged in the sale of intoxicating liquors, which, by the terms of his membership, rendered his certificate absolutely void from and after the date of his so engaging in such prohibited occupation.

The conclusion at which we have arrived is that the death of the insured by his own hand at once rendered the contract of insurance void, both as to the member and his beneficiary, and is sustained by many well-considered cases. *Supreme Commandery K. G. R. v. Ainsworth*, 71 Ala. 436, 46 Am. Rep. 332; *Supreme Lodge K. P. v. LaMalta*, 95 Tenn. 157, 30 L. R. A. 838; *Stohr v. San Francisco Musical Fund Soc.* 82 Cal. 557; *Fugure v. Mutual Soc.* 46 Vt. 362, 370; *Daughtry v. Knights of Pythias*, 48 La. Ann. 1203. We think that the insured might and did contract with the defendant company to be bound and affected, in reference to by-laws and regulations of future enactment, as fully and effectually as if such laws and regulations were existing at the time he became a member, and might consent that they should enter into and form parts of the contract, modifying or varying the rights of the parties. We are unable to see that such laws and regulations can be considered as in violation of public policy. There is nothing in the case of *Morrison v. Wis. O. F. M. L. Ins. Co.* 59 Wis. 162, in conflict with the conclusion which we have reached. That case is clearly distinguishable, in that in that case there was no consent, either

actual or constructive, on the part of the insured, to the change, either of the charter or by-law.

2. It is contended that the company had waived the forfeiture of the agreement of insurance by receiving proofs of loss in February, 1895, and retaining the same, and that it subsequently levied an assessment to pay the loss, collected the money, and paid over $2,000, the amount of the losses on the other two contracts. The evidence shows that the matter of the plaintiff's claim was turned over by the company to Mr. Mead, its president, for investigation, and he afterwards turned the same over to Mr. Hubbard, the agent of the company, for that purpose; and finally, as there was a question in regard to the claim, the secretary and other officers declined to do anything about it, unless the directors so ordered. Mr. Gallett, also a member, who was acting for the plaintiff, made an arrangement with the secretary by which the plaintiff might attend the meetings of the board of directors, as she did, at Prentice, at Milwaukee, and at Madison, for the consideration of this matter. Arrangements were also made for her to attend at Stevens Point, where the board was to meet, and she attended, but did not meet the board. It appeared that she had paid traveling expenses for herself and Mr. Gallett in attending these meetings. At the meeting of the board in June, 1895, it appeared "that the loss occasioned by the death of B. B. Hughes was discussed, and $2,000 ordered to be paid, and the balance of $1,000 [here in dispute] to be held subject to a decision by the supreme court in a case similar to this." It also appeared that June 6, 1896, at the meeting of the board in Milwaukee, the plaintiff appeared, and "on motion of Mr. Ryan further consideration of this claim was discussed." The substance of the entire matter appears to have been that the parties were considering and discussing the plaintiff's claim with the expectation of agreeing upon a mutual compromise or adjustment of it. The plaintiff was under

no obligation or duty to meet the directors on these or other occasions. The fact that the parties did meet and attempt to adjust this claim, although the plaintiff expended money incidental to such meetings, constitutes no ground for saying that the defendant thereby waived its defense. Parties may meet face to face, and endeavor to compromise or adjust their controversies, without waiving their rights in respect thereto.

3. The record fails to show that any assessment was specially made, collected, or in any manner appropriated, for the payment of the loss or claim in dispute. By section 9 of the by-laws it was provided that: "Whenever it shall become necessary to make an assessment to replenish the policy fund as provided in section 11 of the charter, the secretary shall enter in a book, to be kept for that purpose, and known as the assessment book, an order substantially in the following form: The amount in the policy fund being insufficient, in the opinion of the secretary, to pay all outstanding unpaid losses, an assessment, to be known as Assessment No. —— of the year ——, is hereby made and levied upon all the members of the *Wisconsin Odd Fellows' Mutual Life Insurance Company* to replenish said fund. Dated, etc. ——, Secretary." Sec. 11 of the charter (ch. 1, Laws of 1887) provided that "whenever the amount in the policy fund hereafter provided for shall be insufficient in the opinion of the secretary to pay all outstanding unpaid losses, the secretary shall make an assessment upon the members of the company to replenish said fund, and shall notify the members thereof," etc. Sec. 13 provides that there shall be two funds, namely, the policy fund and the reserve fund. "All death losses and the excess of the company's expenses above the income of the reserve fund, if any, shall be paid from and out of the policy fund." The order of the secretary for an assessment to replenish the policy fund, dated March 1, 1895, was put in evidence, as follows:

" The amount of the policy fund being insufficient, in the opinion of the secretary, to pay all outstanding losses, a double assessment, to be known as assessments number 145 and 146 for the year 1895, is hereby made and levied upon all of the members of the *Wisconsin Odd Fellows' Mutual Life Insurance Company* liable to pay assessments to replenish said fund.

" Milwaukee, Wis., March 1st, 1895.

" J. W. OSTRANDER, Secretary."

The notice given under said order stated as follows: " We have received notice and proof of death of the following named members since our last assessment: Mrs. M. Bowes, Beaver Dam, died October 2nd, 1894, insured for $1,000; B. B. Hughes, Prentice, died December 7th, 1894, insured for $3,000;" and specified also the death of ten other persons and the amounts for which they were insured. The amount of the policy fund of the company on hand on the 31st of March, 1897, was $1,600. The evidence wholly failed to show how much of the assessment thus ordered, if any, was collected, or that any specific part of it was paid, collected, or appropriated to pay the claim in dispute. If the policy fund was replenished by the assessment ordered, the money collected was the money and property of the defendant, which it had the right, as against the plaintiff, to hold, use, and appropriate as it might see fit. We cannot say that replenishing its policy fund by the assessment involves any admission of the plaintiff's claim, or of any liability on account of it, or waiver of the forfeiture upon which the defendant insists.

It follows from these views that the defendant established a complete defense to the action, and that the court erred in directing a verdict in favor of the plaintiff.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.