EDITH M. THIBERT v. SUPREME LODGE, KNIGHTS OF HONOR.

December 20, 1899.

Nos. 11,883—(150).

### Benefit Societies—Articles and By-Laws.

The rights of members in beneficial insurance associations must be made to depend upon the articles of association and the by-laws which have been adopted; and, generally speaking, the body which is authorized to make by-laws may change, amend, or repeal those already in existence. But changes, amendments, and repeals are subject to the restrictions and limitations of the charter or articles of association, and of the by-laws themselves, and are also subject to the implied condition of being reasonable.

### By-Laws.

By-laws in operation when a member enters an association may be reasonable and valid as to him, on the ground of his having assented thereto when accepting membership, and yet be unreasonable and invalid as to present members when adopted as changes and amendments to existing by-laws, such members not having assented thereto in any manner.

### Notice of Assessments.

When T. became a member of a subordinate lodge, and received a beneficial insurance certificate from defendant corporation, he was entitled, under the by-laws, to written or printed notice from the reporter of such lodge, dated on the first day of the month, in case the assessments and levies for such month for the payment of death claims exceeded or were less than two in number. Subsequently the lawmaking body abrogated the provision, and enacted that on or before the last day of each month every member should pay the amount of each assessment levied, and, failing to pay, should stand suspended, and not entitled to the benefits of the insurance fund. It was further provided in the amended by-laws that: "Each subordinate lodge may, at its option, provide for notification to its members of the number of assessments thus levied, which may be by written or printed notice, or by newspaper containing the supreme reporter's official notice of such levy, mailed or personally de-

livered to the members; but no failure on the part of such lodge to give notice to members, or failure to receive such notice shall operate to relieve from suspension any member who shall fail to pay the assessments as required by section 7 of this article." It was not shown that T. had any knowledge of the change when he died, November 19, 1893, not having paid any part of three assessments levied and payable on or before the last day of October. *Held* that, as to him, the change and amendment in the by-law in force when he became a member was unreasonable and of no effect, and that it is immaterial that under the by-law above quoted the subordinate lodge had designated a newspaper for the publication of notices, in which notice of these assessments had been published, and that a copy of such paper had been duly mailed to T.

## Evidence.

There was testimony from which the jury could have found that about the middle of October the reporter of the subordinate lodge notified T.. in person, of these three assessments, and that T. promised to make payment before he went away to work. He did not pay as he promised. *Held*, that if the jury had found that this personal notice was given and the promise made, a reasonable time for making payment having expired before T. died, plaintiff was not entitled to recover on the certificate.

Action in the district court for Houston county to recover $2,000 on a benefit certificate. The case was tried before Kingsley, J., who directed a verdict in favor of plaintiff for the amount demanded. From an order denying defendant's motion for judgment notwithstanding the verdict, but granting its motion for a new trial, defendant appealed. From the order, so far as it granted a new trial, plaintiff appealed. Affirmed as to defendant's appeal. Dismissed as to plaintiff's appeal.

*E. H. Smalley*, for plaintiff.

*James O. Pierce*, for defendant.

COLLINS, J.

Jean Louis Thibert was in his lifetime a member of a subordinate lodge of the Knights of Honor. The defendant is incorporated as the supreme lodge of such Knights, its purpose being to collect and disburse what is known as a "Widows' and Orphans' Benefit Fund." The subordinate lodges send delegates to their state lodges annually, and the latter send delegates to the supreme

lodge, which also holds annual meetings. The power to alter, amend, and enact by-laws for the collection, control, and disbursement of the fund before mentioned is vested in the supreme lodge, and may be exercised at its annual meetings.

Thibert made application in writing in February, 1892, to become a member of the subordinate lodge at Chippewa Falls, Wisconsin, which was favorably acted upon; and by reason thereof the defendant issued to him a benefit certificate bearing date March 29, 1892, by which defendant agreed to pay out of the fund before referred to the sum of $2,000, upon being furnished satisfactory evidence of Thibert's death, providing he was a member in good standing when his death occurred, and had not been suspended for failing to pay dues and assessments to the fund. A brother was named as beneficiary. In his application he stipulated that his beneficiary should only be entitled to payment in case he (Thibert) should comply with the laws, rules, and regulations then in force or subsequently enacted; and in the certificate it was provided that payment should be made only upon condition that Thibert complied

"With the laws, rules, and regulations now governing this order, or that may be hereafter enacted for its government."

Thibert died November 19, 1893, and thereupon the brother assigned the certificate to his widow, the plaintiff, and she brought this action. At the conclusion of the trial, defendant's counsel moved the court to direct a verdict for his client upon all of the evidence. The court denied this motion, and instructed the jury to return a verdict in favor of the plaintiff for the full amount of the certificate, which was done. Upon a settled case, defendant's counsel moved for judgment against plaintiff notwithstanding the verdict, and, if that was denied, then for a new trial; and the appeal is from an order denying the motion for judgment, but ordering a new trial.

When Thibert received his certificate, in 1891, what were known as the by-laws of that year were in force. And there was at all times an officer of defendant known as "Supreme Reporter." One of the 1891 by-laws provided (section 2 of article 7):

"On the 20th day of each month the supreme reporter shall determine the number of assessments, if any, necessary to provide for the payment of deaths which may be registered during the ensuing month, shall levy the same, and shall immediately mail notice thereof to each lodge. If the number of assessments so determined be greater or less than two in any month, each member shall be notified thereof at once by the reporter of his lodge, by a notice bearing date of the first day of said ensuing month."

Another by-law was in the following words (section 3, art. 7):

"Call of Assessments. On the first day of each month, if it be necessary in order to provide additional funds for the payment of death benefits, a call shall be made upon each lodge for the amount of such assessment or assessments as were made on the first day of the preceding month, on all members upon whom the degree had then or previously been conferred."

There was another (section 7 of article 7) as follows:

"Payment of Assessments. On or before the last day of each month each member shall pay the amount of two assessments, unless the number of assessments due and to be paid during such month shall have been determined to be greater or less than two, in which event he shall pay the amount of assessments thus determined. A member failing to pay any assessment required by law shall stand suspended, and shall not thereafter be entitled to the benefits of the widows' and orphans' benefit fund until he has been duly reinstated in his subordinate lodge in accordance with the laws of the order."

While under the head of "Notice of Assessments" (section 6, art. 7) was one in this language:

"Notice of Assessments. Subordinate lodges may, at their option, notify members of assessments. But neither the giving of such notice, nor the failure to do so, shall affect the standing of the member in case he fails to pay the assessments as required by section 7 of this article."

From these by-laws it will appear that in 1891, when Thibert obtained his certificate, it was the duty of an officer of defendant, called the "Supreme Reporter," to determine on the 20th day of each month the number of assessments which would be needed to provide for and pay death claims duly proven or registered for the coming month, and to levy the assessments so determined, of which

levy he was to give immediate official notice to each subordinate lodge. This levy was in anticipation of deaths, and evidently the intention was thus to hasten payment of claims. If the assessment was for more or less than two deaths, it was incumbent upon the reporter of each subordinate lodge to give notice, of date the first day of the month in which payment was to be made, to each and every member. It is quite clear, from the fact that this notice was to be dated, that written or printed notice was required. Payment of two assessments on or before the last day of each month was imperatively required of each member, unless the number of assessments had been determined to be greater or less than two. In such case notice was necessary, before the member was in default. If payment was not made, within the month, of any assessment required by the levy, the member so failing to pay stood suspended by operation of law; and from that time, until duly reinstated, his beneficiary was not entitled to participate in the fund we have mentioned. Failure to pay worked the suspension from membership, and suspension, in itself, terminated all claim upon the benefit fund.

We have quoted a by-law upon the subject of "Notice of Assessments." This by-law is, as are nearly all we have examined in this case, somewhat awkward in its construction, and a little difficult to harmonize with other laws adopted by the supreme lodge. But, as we construe this particular by-law, it referred solely to some rule of a subordinate lodge concerning other or different or additional notice to members, and not to the notice to be given by the reporter of each lodge in case the assessments levied were more or less than two. It authorized the subordinate lodges, at their option, to provide for the giving of notices of all assessments,—for notice, for instance, of assessments where but two were levied, no notice of any kind in case of two standing assessments being required by any other by-law. A by-law of the defendant corporation of such value and importance to every member as was that which imperatively imposed upon the reporters of the subordinate lodges the duty of notifying each member of the number of assessments, in case they exceeded or were less than

two, should not be wiped out of existence by so crude a provision as the one quoted.

We are therefore of the opinion that when Thibert received his certificate he was entitled to written or printed notice, unless waived, from the reporter of his lodge, in all cases where the assessment was for a greater or less number than two. If, then, the law of 1891 is to govern the case, he was not in default when he failed to pay the amount due for these assessments made by the supreme reporter September 20, 1893, numbered 381, 382, and 383, of which the reporter of his lodge was duly advised; said assessments being payable on or before the last day of October. And as a consequence he was not a suspended member when he died, in November.

But defendant's counsel insists that, in any event, Thibert was suspended because he failed to pay two of the three assessments during October. The argument is that under the by-laws it was incumbent on him to pay the amount of two assessments at or before the last day of each month, and, if he neglected to do this, he stood suspended under all circumstances. But the by-law does not so read, and should not be so construed. In fact, if it were of doubtful construction, it should not be interpreted in aid of an attempt to work a forfeiture. The by-law is that the member shall pay the amount of two assessments each month, unless the number due and to be paid shall have been determined to be a greater or less number than two, and in such case the member shall be notified in accordance with another by-law. The number of assessments determined upon for the month of October was three. The notice was not given, and the by-law, in express terms, provided that it should be. The defendant cannot escape liability on the ground that, while notice was positively demanded in case the assessments were more or less than two, Thibert should have done something not required of him. There was no by-law which imposed upon him the duty of paying two assessments, without notice, when three had been determined upon, although it is not unlikely that this would have been his duty, without notice, if the number determined upon had been two.

But the principal question on this appeal arises out of the fact

that in 1893 the by-laws were changed and amended; and it is the contention of defendant's counsel that Thibert was brought within the influence and control of these changes and amendments, because of the agreement that he should be, found in his application to defendant corporation, and because it was stipulated in the certificate on which this action is founded that it is issued upon condition that he complies

"With the laws, rules, and regulations now governing this order, or that may be hereafter enacted for its government."

It appears that by changes and amendments in 1893 the requirement as to notice by the reporter of each lodge, to every member, of the number of assessments, in case such assessments were more or less than two, was entirely abrogated, and a new plan adopted; section 2 of article 7 being amended so as to read thus:

"On the 20th day of each month the supreme reporter shall determine and levy the number of assessments, if any, necessary to provide for the payment of benefits on the deaths which may be registered during the coming month: provided, however, that the levy of assessments upon members initiated on or after the first day of July, 1892, shall not exceed one assessment per month during the first six consecutive months, nor two assessments per month during the next eighteen consecutive months, of membership. The supreme reporter shall immediately mail notice of such levy of assessments to the reporter and financial reporter of each subordinate lodge."

And section 3 of the same article was amended so that it read as follows:

"Each subordinate lodge may, at its option, provide for notification to its members of the number of assessments thus levied, which may be by written or printed notice, or by newspaper containing the supreme reporter's official notice of such levy, mailed or personally delivered to the members; but no failure on the part of such lodge to give notice to members, or failure to receive such notice, shall operate to relieve from suspension any member who shall fail to pay the assessments as required by section 7 of this article."

And at the trial the defendants offered to show that after this amendment Thibert's lodge had, under this section, designated a newspaper published in Boston, Massachusetts, as the one in which

official notices of assessment and levy should be given, and that notice of the October assessments and levy, numbered 381, 382, and 383, was so given, a copy of the paper being mailed to each member of said lodge.  The offer was rejected.  There was no attempt to prove that Thibert participated in the action of the lodge on this matter, or that he ever knew of it.  Section 7 of said article 7, relative to the payment of assessments, was also amended in 1893 so that it read:

"On or before the last day of each month each member shall pay the amount of such assessments as shall have been levied. But members initiated after July 1, 1892, shall only pay one assessment per month during the first six consecutive months, and not exceeding two assessments per month during the next eighteen consecutive months, of membership.  A member failing to pay any assessment required by law shall stand suspended, and shall not thereafter be entitled to the benefits of the widow and orphans' benefit fund until he has been duly reinstated in his subordinate lodge in accordance with the laws of the order."

As will have been seen, the effect of these amendments was to substitute new methods of assessment, and of giving notice of the same, as a prerequisite to suspension and consequent loss of rights in the benefit fund.  Instead of receiving notice, written or printed, from the reporters of the subordinate lodges, of assessments, in case they exceeded or were less than two each month, lodges, at their option, were authorized to provide for notification by either written or printed notice, or through a designated newspaper, to be mailed or personally delivered to the members; and it was expressly provided that no failure on the part of the lodge to give notice, or failure to receive, should relieve members from the operation of another by-law, which prescribed absolute and unqualified suspension if assessments were not paid within the month. This was a radical and very serious departure from the previously existing by-law.  It not only authorized the subordinate lodges, at their option, to do away with written or printed notices of assessments, and to substitute an entirely different method, by causing notice to be published in a designated newspaper; but, in terms, it declared that the failure of a lodge to give, and a failure of a member to receive, notice, should not operate to relieve members

from the consequences of an omission to pay. They would stand suspended anyhow. If they neglected to pay all assessments, their rights were gone. No notice was required to work forfeitures, and there was no provision under which members could have a hearing.

It is possible that, as an original by-law, a provision of this character would be held reasonable and operative on the ground that, if persons chose to become members of an association with such drastic rules, theirs was the right so to do. But this was not the by-law when Thibert united with his lodge. The question is not as to the reasonableness of a by-law in force when he cast his fortunes with the order, but it is as to the reasonableness of a change in a by-law after he became a member, and of which it was not shown that he had any personal knowledge. In fact, it has been held that provisions for forfeitures in the original by-laws of mutual benefit societies, without providing for notice, or giving an opportunity to be heard, are void because unreasonable. 1 Bacon, Ben. Soc. § 85, and cases cited. But if the proposition that such a sweeping change as that attempted by defendant in 1893 as to notice of assessments can be upheld, and the rights, which have become vested and valuable, of those who have previously become members, be taken away through such a forfeiture, these associations should no longer be called benevolent, for they may easily become oppressive. They may cease to be of pecuniary service to those who, because of the death of the wage earner of the family, need aid and assistance, and become nothing but a trap into which members may pay their assessments for years, and at last have everything confiscated through the action of the lawmaking body.

The rights of members in these associations must, of course, depend upon the articles or by-laws, to which all members assent when becoming such; and, generally speaking, the same body which is authorized to make by-laws can change, amend, or repeal those already made; and to this Thibert agreed when he joined. But changes, amendments, and repeals are subject to the restrictions and limitations of the by-laws themselves, as well as those of the charter or articles of association, and are also subject to the implied condition of being reasonable. 1 Bacon, Ben. Soc. § 91a, and citations. The amendments and changes in 1893 took away the

right which members had under the laws of 1891, to notice of monthly assessments, should they exceed or be less than two, and imposed upon each member the duty of taking notice himself of the number. He could not even pay two assessments, in the absence of notice, and protect himself. It conferred upon each subordinate lodge the power to provide, at its option, for notice to each member, and then wiped out the effect and benefit of an exercise of this power by declaring that a failure to give the notice agreed upon should not operate to relieve a member from his positive obligation to pay. If a member received the notice, and did not pay, he stood suspended, and had forfeited his rights, unless reinstated. If he did not receive the notice, and failed to pay, he was in the same predicament. The value of the publication of such a notice in a newspaper, except to its publisher, is not strikingly apparent.

We are compelled to hold that a change or amendment to the by-law in force when Thibert entered the association, whereby it was incumbent upon the reporter of his lodge to give him notice of assessments, if for a greater or less number than two, which deprived him of all right to any notice, either directly or indirectly, by means of a provision rendering a failure to give notice as determined upon by his lodge wholly immaterial, was a vitally important change, and, as to him, unreasonable and void. Nor is the reasonableness or unreasonableness of this change affected by the fact, if it was a fact, that his lodge had designated a newspaper in which notices were to be published, and copies mailed to each member. This was a radical and unreasonable change in the method of giving notice, which, according to the previously existing rule, was to be given by the lodge reporter. We are quite confident that no member who had been receiving and relying upon this form of notice would suppose, upon receiving such a paper, that this method of notifying had been substituted for the other.

But it does not follow that Thibert was not in default, and a suspended member, when he died. At the trial the reporter of his lodge testified that he met Thibert at Chippewa Falls about the middle of October, and then and there personally notified him of the assessment and levy in question, and also that the amount thereof

must be paid on or before the last day of that month, and further testified that Thibert then promised to pay said amount before he left the town to go into the woods, where he had employment. The lawmaking body of this defendant corporation had wiped out the by-law under which notice had previously been required ·and had been given, so that it was no longer to be followed. And probably it would have had the power to substitute in place thereof the kind of notice which was given, if the testimony of the reporter was entitled to credit. Such a substituted by-law would, we think, have been reasonable and operative as to all members. So, if the lodge reporter was truthful, Thibert had actual notice of the three assessments.

A majority of the court are of the opinion that this notice, if given, and he accepted it as sufficient by promising to pay, was sufficient, and also that he would have a reasonable time thereafter within which to pay. If the notice was actually given, and about the middle of the month, as testified to by the witness, a reasonable time had certainly elapsed before his death on November 19. If this notice was given to Thibert, his widow could not recover upon this certificate, for he stood suspended at the time of his death. The writer takes occasion to say that he does not assent to the proposition that the reporter, or any other officer of the subordinate lodge or of the defendant corporation, could put Thibert in default by any other kind of notice than that required by the law of 1891. If the amendments of 1893 were unreasonable, and consequently of no effect as to Thibert, he could not, in the opinion of the writer, be put in default by verbal notice. He continued to be entitled to the notice provided for by the 1891 by-law, for as to him that law remained in force. But, in any event, the question whether the reporter gave the notice testified to was for the jury; taking into consideration, as we must, that Thibert, who alone could deny the conversation, was dead, and could not be heard. We must not be understood as saying that, in all cases where one of the parties to a conversation is deceased, the truthfulness of a version of the living as to what was said between them is for the jury. But in this case we think it was.

There is nothing whatsoever in the claim of counsel for plaintiff

that the effect of the payment by Gregoire, the day before Thibert died, was to reinstate him.

The order stands affirmed.

It is further ordered that plaintiff's appeal from that part of the order of July 11, 1899, which set aside the verdict and granted a new trial, be, and hereby is, dismissed.