## C. R. EVERSBERG, GUARDIAN, V. SUPREME TENT KNIGHTS OF THE MACCABEES OF THE WORLD.

Decided November 20, 1903.

**1.—Fraternal Insurance Company—Amendment of By-Laws.**

The by-laws of a fraternal insurance organization provided that the printing in the official organ of any notices required to be given the members when such notices are signed and attested by the proper officers, shall be deemed a legal and sufficient service. They further required the supreme record keeper of the order to compile and arrange for publication, subject to the approval of the board of trustees, all amendments to the by-laws adopted by the supreme legislative body. Held, that such provisions of the by-laws did not depend the validity and force and effect of amendments, regularly adopted, upon their publication in the official organ.

**2.—Same—Binding Agreements—Change of By-laws.**

Recitals in an application to a fraternal insurance organization for membership wherein the appellant agreed to be bound by the laws of the order then in force or that might thereafter be adopted, is a recognition of the right of the order to change its by-laws, and a consenting in advance by the applicant to be bound by any changes that might be made. Such an agreement is valid and binding upon the applicant so admitted to membership, and upon the beneficiaries under his certificate.

Appeal from the District Court of Washington. Tried below before Hon. Ed R. Sinks.

*W. C. Henderson,* for appellant.

*W. S. Robson, John T. Duncan,* and *Duncan, Wolters & Lane,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—The appellant as guardian of the minor children of E. H. Eversberg, deceased, brought this suit to recover upon a benefit certificate for $3000 issued by appellee to the said E. H. Eversberg on December 18, 1893.

The answer of the defendant in the court below admitted all of the material allegations of the petition, but pleaded as a defense that said E. H. Eversberg committed suicide, and that under the law of appellee association, passed prior to the death of said Eversberg, appellee was only liable on said certificate to the extent of double the amount of the assessments which had been paid thereon. This amount was tendered into court by the defendant and upon a trial of the cause by the court below judgment was rendered for plaintiff for the amount tendered by defendant, and in favor of defendant for all costs of suit. From this judgment plaintiff below prosecutes this appeal.

The cause was tried in the court below upon an agreed statement of facts, supplemented by additional evidence introduced by both parties. All of the evidence in the case is undisputed. Under the evidence and agreed facts in the case appellant as guardian is entitled to recover the full amount named in the certificate sued on unless the suicide law

pleaded by appellee is applicable to said certificate, in which event the amount recovered in the court below is the measure of appellee's liability. The material facts bearing upon this issue are as follows:

The appellee is a fraternal beneficiary association, incorporated under the laws of the State of Michigan, and having a permit to do business in the State of Texas.

The legislative and governing body of the association is designated in the charter and by-laws as the supreme tent. The subordinate organizations, as designated in said by-laws, are great camps, district camps and subordinate tents. All of these subordinate organizations are chartered by the supreme tent.

On the 28th day of November, 1893, E. H. Eversberg, who had theretofore applied for and been admitted to membership in subordinate tent No. 4 of appellee association, secured a death benefit certificate for $3000 issued by appellee. This certificate provides that at the death of said Eversberg the sum of $3000 should be paid by appellee to the beneficiaries named therein, provided said Eversberg "shall have in every particular complied with the laws now in force or that may hereter be adopted." At the time Eversberg made his application and became a member of the order the by-laws contained this provision:

"No benefit shall be paid on account of death the result of suicide within one year after admission, whether the member in taking his own life be sane or insane at the time."

The application for membership in defendant order signed by Emil H. Eversberg contained, among other things, the following: "I hereby declare * * * and I hereby agree that * * * the laws of the Supreme Tent of the Maccabees of the World now in force, or that may hereafter be adopted, shall form the basis of this contract for beneficial membership. * * * I also agree that should I commit suicide within one year from the date of my admission into the order, whether sane or insane at the time, that this contract shall be null and void and of no binding force upon the supreme tent. * * * This application and the laws of the supreme tent now in force or that may hereafter be adopted, are made a part of the contract between myself and the supreme tent, and I, for myself and my beneficiary or beneficiaries, agree to conform to and be governed thereby."

At a regular meeting of the officers, delegates and representatives composing the Supreme Tent of the Knights of the Maccabees of the World, held in the month of July, 1901, the suicide law of the order was amended so as to read as follows: "No benefit shall be paid on account of the death of a member taking his own life, whether sane or insane at the time; provided that in case of suicide twice the amount of all assessments or monthly rates paid to the supreme tent by such member shall be paid back to the beneficiary named in the certificate, or to the person found to be entitled to receive the same, which amount shall not exceed the face of the certificate, and such amount shall be the full amount that can be claimed in any such case."

Under the by-laws of the order the supreme tent was given authority to amend or change said by-laws, and the amendment to the by-law on the subject of suicide above set out was regularly passed and adopted by the supreme tent in the manner provided by said by-laws. Under the charter of the association the supreme tent is composed of the supreme officers of the order and of delegates or representatives elected by the several subordinate organizations.

At the meeting of the supreme tent at which the suicide law was amended the subordinate tent to which E. H. Eversberg belonged was represented by a duly elected and accredited delegate.

E. H. Eversberg committed suicide while suffering from an attack of insanity on the 21st day of May, 1902. It was not shown that Eversberg ever had actual notice of the action of the supreme tent in amending the suicide law. The by-laws of the association made it the duty of the board of trustees, which board was composed of the supreme commander, supreme record keeper and supreme finance keeper and two members of the association elected by the supreme tent, to designate some newspaper as the official organ of the supreme tent and to contract with such publication to mail a copy of every issue of same to each member of the association. In pursuance of this authority the trustees designated The Bee Hive, a paper published at Port Huron, Mich., as such official organ, and entered into a contract with said paper to mail a copy of each of its publications to each member of the order. Under this contract The Bee Hive was regularly mailed addressed to E. H. Eversberg at Brenham, Texas.

The by-laws further provided that the printing in the official organ of any notices required to be given the members when such notices are signed and attested by the proper officers, shall be deemed a legal and sufficient service of such notice.

Among other duties imposed by the by-laws upon the supreme record keeper he was required to compile and arrange for publication, subject to the approval of the board of trustees, all amendments to the by-laws adopted by the supreme tent. The amendment to the by-laws limiting the amount to be paid on benefit certificates held by members who had committed suicide was not published in The Bee Hive after its adoption by the supreme tent, but the first issue of said paper after the adoption of said amendment contained an editorial mention of its adoption, and an issue of the paper shortly before the meeting of the supreme tent at which the amendment was adopted contained a copy of the amendment and stated that it would be offered for adoption at the approaching meeting of the supreme tent.

It is not shown that a copy of either of these issues of The Bee Hive was received by Eversberg.

The appellee association was not organized for profit and its purposes are purely charitable and benevolent. The fund from which death benefits are paid is maintained by voluntary assessments paid monthly by the members of the order. The payment of these assessments can not

be legally enforced, the only penalty for failure to pay same being suspension from membership in the order. No one can obtain a benefit in the order without first becoming a member of a subordinate tent, and such privilege can be only conferred by a majority vote of the members of the subordinate tent in which membership is sought.

Appellant under appropriate assignments contends that the judgment of the court below should be reversed for the following reasons:

First. Because the evidence fails to show that E. H. Eversberg had notice of the adoption of the amendment to the suicide law, and, therefore, said amendment could not limit appellee's liability upon the benefit death certificate theretofore issued to said Eversberg.

Second. Because the evidence shows that said amendment has never been published as required by the by-laws of the order, and until so published it is of no force or effect and it not binding upon the members of the order.

Third. Because to construe said amendment as applying to benefit certificates issued prior to its adoption is to give it a retroactive effect to the impairment of vested rights, and is contrary to the Constitution and laws of this State.

The majority of the court, Chief Justice Garrett dissenting, are of opinion that, by the terms of the agreement under which the case was tried in the court below, the issue as to whether proper notice was given of the adoption of the suicide amendment to the by-laws was eliminated from the case, and appellant can not now be heard to raise that issue. Section 17 of the agreement referred to is as follows:

"It is agreed that the only question to be submitted to the court in this cause is, whether or not, under the contract entered into between the defendant and Emil H. Eversberg, the said supreme tent had the right to enact and apply the suicide law of 1901, as hereinbefore set out, to said existing contract. If yea, then the plaintiff is entitled to a judgment for the sum of $323.10, with 6 per cent interest from August 15, 1902, and all costs of these proceedings incurred prior to the date of this agreement; if nay, then plaintiff is entitled to a judgment for $3000, with 6 per cent interest from August 15, 1902, and all costs of these proceedings."

It seems clear that, under this agreement the only question to be determined by the court was whether the appellee had the right or power to enact the law and apply it to existing contracts, and all questions as to whether the by-laws of the order were properly observed in the manner in which the law was enacted and put in force are expressly waived. But be this as it may, the court is unanimous in the opinion that the facts in evidence do not sustain appellant's contention that under the by-laws of appellee association amendments to said by-laws were required after adoption to be published in the official organ, and until so published were of no force or effect. All that is shown by the evidence on this subject is that the association had an official organ and that under the by-laws publication in such organ of any notice required

to be given the members was sufficient notice. There is an entire absence of evidence as to what notices were required to be given the members. The only evidence which contains any intimation that amendments to the by-laws should be published is the by-law which makes it the duty of the supreme record keeper to compile and arrange for publication all amendments to the by-laws adopted by the supreme tent. If this by-law can be construed as requiring a publication of such amendments we are not required to presume that the publication here referred to is to be made for the purpose of notice, or as a prerequisite to the binding effect of amendments adopted by the supreme tent. The language used, "shall compile and arrange for publication," would not ordinarily be employed in regard to the publication of an amendment in a newspaper, but indicates that the publication referred to is a publication together in pamphlet form of all the amendments adopted by the supreme tent.

There being no by-law which required the publication of the amendment in order to give it effect, it became, when regularly adopted, the law of the order and all of the members were charged with notice of its adoption.

We think the contention that the suicide amendment can not be applied to the certificate sued on because to so apply it would impair vested rights, is without merit.

When the holder of the certificate became a member of the order he expressly agreed that he would be bound by the laws of the order then in force or that might be thereafter adopted. He thus recognized the right of the order to change its by-laws and consented in advance to be bound by and changes that might be made. That such an agreement is valid and binding seems to be settled by the great weight of authority. Supreme Lodge v. Trebbe, 179 Ill., 348; Supreme Commandery v. Ainsworth, 71 Ala., 436; Supreme Lodge v. Knight, 117 Ind., 289; Hughes v. Wisconsin Odd Fellows, 73 N. W. Rep., 1015; Dornes v. Supreme Lodge, 75 Miss., 466; Daughtry v. K. of P., 48 La., part 2, p. 305.

In the Hughes case, supra, the court in discussing this question say: "The by-law in question rested on the power delegated by the charter to the directors to pass by-laws and regulations and upon the stipulation of the member to conform in all respects to the by-laws, rules and regulations of the company then in force, or which might be thereafter adopted by the same or its board of directors. The subsequent by-law relied on by the company to defeat a recovery may be fairly said to have been consented to by the insured. He stipulated, in substance, to be bound by the action of the corporation at large, or of its board of directors, in respect to its by-laws, rules and regulations. This was the effect of his contract, and so far from being violative of the provisions of the contract, it is in accordance therewith, and with the consent of the assured contained in his application. He and his beneficiary stood in like condition as to the rights and interests represented by his mem-

bership in the company as a member of the civil state, having, as a condition of the benefits and advantages· of membership, submitted to be bound as such member by the action of the proper legislative authority of the State or company. * * * We think that the insured might and did contract with the defendant company to be bound and affected, in reference to by-laws and regulations of future enactment, as fully and effectually as if such laws and regulations were existing at the time he became a member, and might consent that they should enter into and form· parts of the contract, modifying or verifying the rights of the parties."

We think the soundness of this reasoning can not be questioned, and we shall not attempt to add anything thereto.

The judgment of the court below will be affirmed and it is so ordered.

*Affirmed.*

Writ of error refused.