# ELSIE LEDY v. NATIONAL COUNCIL OF KNIGHTS AND LADIES OF SECURITY.[1]

March 19, 1915.

Nos. 19,092—(283).

**Mutual benefit insurance — suicide — change of by-law.**

1. Where the insurance contract between a fraternal beneficiary association and its members provided that if the insured committed suicide, sane or insane, within two years, the association should be liable for only one-fifth the amount of the benefit certificate, and that the insured should be bound by the laws of the order then in force or thereafter enacted, a subsequent amendment making the suicide provision effective for a period of five years is binding upon a member who commits suicide while sane, and upon those claiming under his benefit certificate.

**Presumption of sanity.**

2. Sanity is presumed and the taking of one's own life does not, in itself, establish insanity.

[1] Reported in 151 N. W. 905.

---

Note.—On the effect of provision avoiding policy if death results from suicide, "sane or insane," see note in 17 L.R.A. 89.  And as to the effect of words "sane or insane" or other words relating to mental condition in suicide clause in policy, see note in 17 L.R.A.(N.S.) 260.

Upon the effect of subsequent by-law excluding or reducing liability in case of suicide, see note in 46 L.R.A.(N.S.) 308.

Action in the district court for Ramsey county to recover $2,000 upon defendant's benefit certificate upon the life of Bernard A. Ledy. The case was tried before Brill, J., who made findings and ordered judgment in favor of plaintiff for $309.70. From an order denying her motion for a new trial, plaintiff appealed. Affirmed.

*Arthur Christofferson, Joseph A. A. Burnquist* and *Alvin B. Christofferson,* for appellant.

*William G. White* and *H. E. Hall,* for respondent.

TAYLOR, C.

On February 12, 1908, defendant, a fraternal beneficiary association, issued a benefit certificate to Bernard A. Ledy in which plaintiff, his wife, was named as beneficiary. The contract provided that the insured should be bound by the laws of the order then in force or thereafter enacted. On December 10, 1912, Ledy committed suicide. The laws of the order, in force in 1908, provided that, if the assured committed suicide within two years after receiving his certificate, the association should be liable for only one-fifth the amount of such certificate. By an amendment to such laws which went into effect in September, 1910, the time during which the above provision should be in force was extended to a period of five years from the issuance of the certificate. Ledy died by suicide about two months before the five years expired. Plaintiff sued for the full amount of the certificate. The trial court held that she was entitled to recover one-fifth thereof and no more. She moved for a new trial and appealed from the order denying her motion.

The only controversy is whether she is entitled to recover the full amount of the certificate, or is limited to one-fifth thereof by the above provision. In either event, certain deductions are to be made for the benefit of the reserve fund, but these amounts were agreed upon and are not in controversy. The statute in force when the contract was made provided that:

"Any changes, additions or amendments to said charter or articles of association, constitution or laws duly made or enacted subsequent to the issuance of the benefit certificate shall bind the member and his beneficiaries and shall govern and control the contract in all

respects the same as though such changes, additions or amendments had been made prior to or were in force at the time of the application for membership." G. S. 1913, § 3544.

It is contended that the amendment, extending the period during which the suicide provision should remain in force, is unreasonable and void as against contracts entered into before its adoption, unless the rule announced in Thibert v. Supreme Lodge, Knights of Honor, 78 Minn. 448, 81 N. W. 220, 47 L.R.A. 136, 79 Am. St. 412; Tebo v. Supreme Council of Royal Arcanum, 89 Minn. 3, 93 N. W. 513; Olson v. Court of Honor, 100 Minn. 117, 110 N. W. 374, 8 L.R.A. (N.S.) 521, 117 Am. St. 676, 10 Ann. Cas. 622; Rosenstein v. Court of Honor, 122 Minn. 310, 142 N. W. 331; Ruder v. National Council of Knights and Ladies of Security, 124 Minn. 431, 145 N. W. 118, has been changed by the above statute; and that the present case turns upon the construction to be given to that statute. We cannot assent to this proposition.

Where a fraternal beneficiary association, in the contract for insurance entered into with its members, stipulates that they shall be subject to, and bound by, the subsequently enacted laws and regulations of the order, the rule is well nigh universal that the association must exercise the power so reserved in a reasonable manner, and that a law of the order, enacted under such power, which would make an unreasonable change in the terms of prior contracts, is void as against such contracts. While the courts differ little as to the general rule, they differ much as to what amendments are unreasonable within the meaning of the rule. They agree quite generally, however, that an amendment, which relieves the association, in whole or in part, from liability in case the assured intentionally ends his own life, is not forbidden by the rule and is valid. Supreme Commandery of Knights of Golden Rule v. Ainsworth, 71 Ala. 436, 46 Am. Rep. 332; Fraternal Union of America v. Zeigler, 145 Ala. 287, 289, 39 South. 751; Scow v. Supreme Council Royal League, 223 Ill. 32, 79 N. E. 42; Knights of Maccabees v. Nelson, 77 Kan. 629, 95 Pac. 1052; Daughtry v. Knights of Pythias, 48 La. Ann. 1203, 20 South. 712, 55 Am. St. 310; Dornes v. Supreme Lodge, K. of P. 75 Miss. 466, 23 South. 191; Lange v. Royal Highlanders,

75 Neb. 188, 106 N. W. 224, 110 N. W. 1110, 10 L.R.A. (N.S.) 666, 121 Am. St. 786; Tisch v. Protected Home Circle, 72 Oh. St. 233, 74 N. E. 188; Supreme Lodge K. of P. v. La Malta, 95 Tenn. 157, 31 S. W. 493, 30 L.R.A. 838; Clement v. Clement, 113 Tenn. 40, 81 S. W. 1249; Hughes v. Wisconsin Odd Fellows Mut. Life Ins. Co. 98 Wis. 292, 73 N. W. 1015. In the above cases it appeared that the insured committed suicide, but it did not appear that he was insane. While the various amendments considered in those cases purported to bar a recovery, whether the insured was sane or insane, at the time of the suicide, and the courts held them valid in language which apparently upheld all the provisions therein, the question actually decided was that they were valid as against those claiming under a member who committed suicide while sane. Such amendments have also been held valid where the insured committed suicide while insane. Supreme Tent, Knights of Maccabees v. Hammers, 81 Ill. App. 560; Court of Honor v. Hutchens, 43 Ind. App. 321, 79 N. E. 409; Chambers v. Supreme Tent, Knights of Maccabees, 200 Pa. St. 244, 49 Atl. 784, 86 Am. St. 716; Eversberg v. Supreme Tent, Knights of Maccabees, 33 Tex. Civ. App. 549, 77 S. W. 246. Other courts have held such amendments valid where the insured was sane at the time of the suicide, but invalid where he was insane and not responsible for his act. In Weber v. Supreme Tent, Knights of Maccabees, 172 N. Y. 490, 65 N. E. 258, 92 Am. St. 753, the New York court held that an amendment extending the suicide provision from one year to five years was unreasonable and void as to a member who committed suicide while insane. In the later case of Shipman v. Protected Home Circle, 174 N. Y. 398, 67 N. E. 83, 63 L.R.A. 347, the court approved the decision in the Weber case, but said that in the Weber case there was a finding that the insured was insane at the time of the suicide, while there was no such finding in the case then under consideration, and held that the insured was presumed to have been sane, and that the amendment was valid in such cases and barred a recovery. In Supreme Conclave Heptasophs v. Rehan, 119 Md. 92, 85 Atl. 1035, the court, after discussing the authorities, say:

"We, therefore, hold upon what we regard as the safer, sounder,

and more reasonable rule upon this question, ·that the after enacted by-law before us is not binding upon the plaintiff, if her husband took his own life *while insane;* but that it is binding upon her, if he committed suicide *while sane.*"

In Plunkett v. Supreme Conclave, 105 Va. 643, 55 S. E. 9, it did not appear affirmatively that the insured was insane. The court held that he must be deemed to have been sane and that the by-law was therefore valid and binding, but say they do not determine whether it would be binding in case the member had been insane. In Olson v. Court of Honor, 100 Minn. 117, 110 N. W. 374, 8 L.R.A.(N.S.) 521, 117 Am. St. 676, 10 Ann. Cas. 622, this court held that the by-law, there under consideration, was not valid or binding in a case where the member was insane, and under treatment for insanity, at the time he took his own life. Whether an amendment enacting a suicide provision is valid and binding in a case where the insured committed suicide while sane, does not appear to have been considered or determined by this court. A few courts have held such amendments void (Lewine v. Supreme Lodge, K. of P. 122 Mo. App. 547, 99 S. W. 821; Sautter v. Supreme Conclave, 72 N. J. Law, 325, 62 Atl. 529); but, as shown by the cases hereinbefore cited, the great majority of courts hold them valid. The reasons assigned are various. Attention is frequently called to the fact that, at common law, suicide was a crime which entailed forfeiture of property; that, while the successful perpetrator is beyond the reach of the law, he commits an act which is *malum in se* and which the law tries to prevent by all the means in its power; that he has no moral, legal or other right to commit such an act; that the law cannot say that a provision which prevents him from fastening liability upon the association by his own criminal act voluntarily committed is unreasonable; and that such a provision not only invades no legal or vested right, but takes away a possible incentive to commit a heinous offense.

In the instant case there is no claim that the insured was insane, and he is presumed to have been sane. 2 Dunnell, Minn. Dig. § 4516. The fact that he committed suicide is not, in itself, sufficient to establish insanity. Wilkinson v. Service, 249 Ill. 146, 94 N. E. 50,

Ann. Cas. 1912A, 41, and cases cited in note. We think there is a wide distinction between a case where death results from the irresponsible act of an insane person, and a case where it results from the intentional act of a person in his right mind; that the amendment in question cannot be declared unreasonable, either upon principle or authority, when applied to a case in which the insured committed suicide while sane, even if the statute quoted should be construed as merely a legislative enactment of the rule previously recognized by this court; and that plaintiff is bound by the provision as amended.

Order affirmed.