ZIMMERMANN, JR., by his Curatrix, Respondent, v.
THE SUPREME TENT OF THE KNIGHTS OF
THE MACCABEES OF THE WORLD, Appellant.

St. Louis Court of Appeals, February 5, 1907.

1. **MUTUAL BENEFIT SOCIETIES: Future By-Laws: Impairing
   Obligation of Contracts.** A member of a mutual benefit society
   may agree in advance to be governed and controlled by the by-
   laws then in force or that thereafter may be enacted by the
   association; but in this State it is held that such an agreement
   applies only to the duties of the member making the agreement
   and does not authorize the society without his assent to change
   or modify his contract of insurance.

2. ————: ————: ————: **Suicide.** An application for membership
   in a mutual benefit society provided that the member should
   be bound by the laws then in force or those that might there-
   after be adopted; a by-law then in force provided that if a mem-
   ber committed suicide within five years after his admission, a
   beneficiary would only be entitled to the amount paid in, and
   a by-law was subsequently enacted removing the limit of time
   so that he should receive only the amount paid in if at any time
   the insured committed suicide. The member committed suicide
   after the expiration of five years. *Held,* he was not bound by
   the change in the by-laws because its effect was to impair his
   contract and his beneficiary could recover the full amount pro-
   vided in his certificate.

Appeal from St. Louis City Circuit Court.—*Hon. Rob-
ert M. Foster,* Judge.

AFFIRMED.

*R. P.* and *C. B. Williams* for appellant.

(1) Where a member of a benefit society contracts
in advance, in his application and certificate, that subse-
quently enacted laws shall form the basis of his con-
tract, and expressly binds himself and beneficiary to be
governed by such laws, an after-enacted law reducing the

amount agreed to be paid in the certificate in the event of the suicide of the member, will be enforced. Knights of Maccabees v. Hammers, 81 Ill. App. 560; Chambers v. Knights of Maccabees, 200 Pa. St. 244; Knights of Maccabees v. Stensland, 105 Ill. App. 267; Schmidt v. Knights of Maccabees, 97 Wis. 528; Sheperd v. Bankers' Union, 108 N. W. 188; Royal Highlanders v. State, 108 N. W. 186; Union So. v. Martin, 23 Ky. L. R. 2276; Woerfler v. Trustees, 116 Wis. 19; Messer v. A. O. U., 180 Mass. 321, 62 N. E. 252; Evans v. So. Tier, 76 App. Div. 151; Daidge v. Royal, etc., 4 Ont. L. R. 423; Ross v. Modern Brotherhood, 120 Iowa 692; Pain v. Society St. Jean Baptista (Mass.), 52 N. E. 502; Hall v. Western Travelers (Neb.), 96 N. W. 170; Miller v. National Council (Kan.), 76 Pac. 830; Sup. Lodge v. La. Malta, 95 Tenn. 157; Fullenwider v. Sup. Council, 180 Ill. 621, 54 N. E. 485; Domes v. Sup. Lodge, 75 Miss. 466; Laeffler v. Modern Woodmen, 100 Wis. 79; Daughty v. Sup. Lodge, 48 La. Ann. 1203; Haydell v. Mut. Reserve, 104 Fed. 118; Mut. Res. Fund v. Taylor, 99 Va. 208; Supreme Lodge v. Stein, 75 Miss. 107; Supreme Lodge v. Kutscher, 179 Ill. 340; Supreme Lodge v. Trebb, 179 Ill. 348; Supreme Legion v. Clark, 88 Ill. App. 600; Stohl v. Society, 82 Cal. 560; Hobbs v. Assn., 47 N. W. (Iowa) 984; Hughes v. Odd Fellows, 73 N. W. 1015; Westerman v. Supreme Lodge, 94 S. W. (Mo. Sup.) 483; Campbell v. American Ben. Club, 100 Mo. App. 249; Lange v. Royal Highlanders, 106 N. W. (Neb.) 224; Union Fraternal League v. Johnston, 53 S. E. (Ga.) 241. (2) There is no vested interest in the beneficiary in a benefit certificate issued by a fraternal beneficiary association, and therefore a subsequent by-law changing the contract or reducing its obligations, does not disturb any vested rights. Masonic Ben. Assn. v. Bunch, 109 Mo. 560; Wells v. Mutual Ben. Assn., 126 Mo. 630; Richmond v. Supreme Lodge, 100 Mo. App. 8; Morton v. Royal Tribe of Joseph, 93 Mo. App. 78. (3) The fact that a subse-

quent by-law alters or impairs a prior contract or lessens the liability of the company on such contract does not affect the validity of such by-law, if otherwise reasonable, and the assured agreed in advance that such by-law should form a part of his contract. Supreme Commandery v. Ainsworth, 71 Ala. 436; Eversberg v. Knights of Maccabees, 77 S. W. (Tex. Civ. App.) 246.

*William S. Campbell* for respondent.

(1) It is an established rule, that courts, being strongly inclined against forfeitures will construe all the conditions of the contract and the obligations imposed, liberally in favor of the assured and strictly against the insurer. Price v. Life Ins. Co., 17 Minn. 497, 10 Am. Rep. 166; Halpin v. Ins. Co., 120 N. Y. 73; Healey v. Mut. Accident Assn., 133 Ill. 556; Stinchcombe v. Life Ins. Co., 80 Pac. (Oregon, 1905) 213; Smith v. Supreme Lodge, 83 Mo. App. 523. (2) Where the language of a policy may be understood in more sense than one, it is to be construed against the insurer, because he frames it, and is supposed to make it as potent as possible in his own favor. Rankin v. Amazon Ins. Co., 89 Cal. 203, 23 Am. St. Rep. 463; Moulor v. Ins. Co., 111 U. S. 342; Ins. Co. v. McConkey, 127 U. S. 666. (3) Subsequent by-laws undertaking to reduce the amount to be paid under certain contingencies, such as death by suicide, do not take effect on previous contracts, and stipulations in the application, and certificate of insurance that the member will comply with future regulations, means the member will comply with such as relate to his duty as a member, but it does not mean that the association may interfere with the essential purpose of the contract, namely, the indemnity covenanted to be paid. Smith v. Supreme Lodge, 83 Mo. App. 526; Pearson v. Life Indemnity Co., 114 Mo. App. 288; Hysinger v. Supreme Lodge, 42 Mo.

122 App—38

App. 635, 636; Grand Lodge v. Sater, 44 Mo. App. 452, 453; Knights Templar's v. Jarman, 104 Fed. 644, affirmed in 187 U. S. 197; Supreme Council v. Getz, 112 Fed. 119; Fargo v. Supreme Tent, 96 App. Div. 491, 89 N. Y. Sup. 65; Weber v. Supreme Tent, 61 App. Div. 613, 172 N. Y. 490; Beach v. Supreme Tent, 74 App. Div. 527, 177 N. Y. 100; Hale v. Equitable Aid Union, 168 Pa. St. 377; Becker v. Benefit Society, 144 Pa. St. 232; Pokrefky v. Firemen's Aid Association, 121 Mich. 456; Starling v. Royal Templars, 108 Mich. 440; Newhall v. Supreme Council, 63 N. E. Rep. (Mass., 1902) 1; Gaut v. Supreme Council, 107 Tenn. 603, 64 S. W. 1070; Voigt v. Kersten, 164 Ill. 314; Wist v. Grand Lodge, 22 Oregon, 271; Benjamin v. Mutual Reserve, 79 Pac. Rep. (Cal., 1905) 517; Evans v. So. Tier Relief Association, 182 N. Y. 453. (4) It has been repeatedly held that the provision in the application of the member to comply with future by-laws and regulations, means the member will comply with such by-laws, rules and regulations as relate to his duties as a member of the association, and that the order is powerless, by by-laws or otherwise, to change or modify the essentials of the contract of insurance without the express consent of the member. Morton v. Supreme Council, 100 Mo. App. 91; Sisson v. Supreme Court of Honor, 104 Mo. App. 61.

BLAND, P. J.—On April 13, 1899, defendant issued to Phillip Zimmermann the following certificate of insurance:

"Supreme Tent, K. O. T. M. of the World. No. 11054. $1,000. This certifies that Sir Knight Phillip Zimmermann has been regularly admitted as a member of Imperial Tent No. 52. Located at St. Louis, State of Missouri, and that in accordance with, and under the provisions of the laws of the order he is entitled to all the rights, benefits, and privileges of membership therein, and that at his death one assessment on the member-

ship not exceeding in amount the sum of one thousand dollars will be paid as a benefit to Phillip Zimmermann, Jr., bearing relationship to him of son, upon satisfactory proof of his death together with the surrender of this certificate, provided he shall have in every particular complied with the laws of the order now in force or that may hereafter be adopted, and has not obtained his membership by fraud or misrepresentation as to his age, family history, physical condition or occupation, when admitted to membership, as shown by his application which is hereby made a part of this certificate."

On the back of the certificate were printed certain references to provisions of the laws of the defendant order which were made a part of the certificate. One of these laws reads as follows:

"*When Certificate Void.*—If the member commits suicide within five years after his admission to the order, whether sane or insane, all that his beneficiary shall be entitled to is the sum he has paid into the Life Benefit Fund."

In the application for the certificate (also made a part of the contract) is the following:

"I hereby declare, that the above are fair and true answers to the foregoing questions and I hereby agree that these statements, together with those hereinafter made to the examining physician in this application and the laws of the Supreme Tent of the Knights of the Maccabees of the World, now in force or that may hereafter be adopted, shall form the basis of this contract for beneficial membership."

At the time of the issuance of the certificate in question, the following law of the association was in full force and effect, being section 173, of the laws of 1897.

"  .  .  .  and no benefit shall be paid on account of the death of any member when death was the result of suicide, within five years after admission, whether the member taking his own life was sane or insane at the

time; or when the death of the member was intentionally caused by the beneficiary or beneficiaries of such member. Provided, that in case of suicide within five years after admission, all assessments paid to the Supreme Tent by such member shall be paid back to the beneficiary named in the certificate, and such amount shall be the full amount that can be claimed in any such case."

On June 17, 1905, there was a law of the order, in force and effect, providing that "no benefit shall be paid on account of the death of a member who shall die by his own hand, sane or insane." This law was amended so as to give the beneficiary, in all cases of suicide by the member, an amount equal to twice the amount contributed by the suicide to the life benefit fund (twice the amount of assessment paid in by the suicide during his life).

Zimmermann died on the seventeenth day of June, 1905. The action was to recover the amount of the benefit certificate, with legal interest. The petition is in the usual form for such actions. The answer alleged as a defense, that Zimmermann committed suicide; that during his lifetime he had paid to the life benefit fund eighty-eight dollars and eighty cents, and that prior to the commencement of the suit, defendant tendered plaintiff double this sum (one hundred and seventy-seven dollars and sixty cents) and again tendered the same amount in its answer. At the trial an agreed statement of facts was filed, in which it was admitted that defendant was incorporated as a fraternal benefit association, under the laws of the State of Michigan, and at the time of the issuance of the certificate sued on, and at all times thereafter, was and had been doing business in the State of Missouri, under the laws of 1897, pertaining to fraternal benefit associations, and was a fraternal benefit association, within the meaning of section 1408, Revised Statutes 1899, and duly authorized to do business

in the State of Missouri as a fraternal benefit association.

Under the pleadings and the agreed statement of facts filed, but two issues were raised: one of fact, viz., Did Zimmermann commit suicide; and one of law, viz., If he did commit suicide, is the right of his beneficiary to a recovery, under the laws of the order, limited to twice the amount paid in by the assured to the life benefit fund of the order? The issue of fact was submitted to the jury, who found that Zimmermann "did, on or about the seventeenth day of June, 1905, commit suicide." The court notwithstanding the verdict, on motion of plaintiff, rendered judgment for plaintiff for the sum of one thousand and twenty-one dollars and sixteen cents, thus deciding the issue of law against defendant. After taking the usual steps to preserve its exception, defendant appealed.

The question decisive of the case is whether the by-law, passed after the issuance of the certificate sued on, making suicide a defense, was operative upon the contract of insurance. It has been frequently said, that neither the beneficiary nor the assured has any vested interest in a fraternal benefit certificate. This is true as to the beneficiary before the death of the member, but the statement is misleading when applied to the insured, for while he has no vested pecuniary interest in the certificate, he has a sort of property interest in the contract, that is, the right to designate who shall be the recipient of his bounty at his death, and the right to keep his contract alive and binding on the association. This right the courts have always protected. For the reason the beneficiary has no vested interest, the courts of this State and elsewhere have uniformly held, that the member may agree in advance that his contract of insurance may be governed and controlled by by-laws then in force, or that may be thereafter enacted by the association. There is, however, a wide divergence in the decis-

ions in the application of such future by-laws. In some of the States (Mississippi, in Dornes v. Supreme Lodge, 75 Miss. 466; Iowa, in Hobbs v. Iowa Ben. Assn., 47 N. W. 984; Alabama, in Supreme Commandery v. Ainsworth, 71 Ala. 436, and in other States) the courts have held, that when the member agrees in advance that "any violation of the requirements of the laws now in force or hereafter enacted," governing the order, or his class, shall render the certificate void, or where the insured, in his application and certificate had agreed to be bound by all laws then in force, or that might thereafter be enacted, the contract of insurance was governed by such future by-laws, and might be declared forfeited for a violation of them. In the Mississippi case, a subsequent by-law, making suicide a defense, was adjudged to be effectual and barred a recovery, the member having committed suicide. This court has uniformly held, that the agreement of the member, such as to abide by and conform to the laws then in force or to be thereafter adopted, applies only to his duties as a member of the order, and has no relation to his contract of insurance. [Morton v. Supreme Council, 100 Mo. App. 1. c. 91-2, 73 S. W. 259, and cases cited; Sisson v. Supreme Court of Honor, 104 Mo. App. 1. c. 61, 78 S. W. 297; Pearson v. Life Indemnity Co., 114 Mo. App. 1. c. 289, 89 S. W. 588; and cases cited.] In the Pearson case, at page 290, we said: "It may be safely asserted that the doctrine of this court is, that beneficiary associations, doing an insurance business on the assessment plan, are without authority to change or modify their contracts of insurance without the express assent of the members."

In his application for insurance, made a part of the contract, Zimmermann agreed that the laws then in force, or that might be adopted thereafter, should form the *basis* of his contract for the beneficiary membership. He agreed that the very foundation of his contract, that

upon which it should stand or fall, should be the laws of the association then in force, or that might be thereafter adopted. Stronger language could not be used to evince an express agreement that the contract should be governed and controlled by future by-laws, and if the subsequently adopted law, making suicide at any time, sane or insane, a defense, is such an one as was competent for the association to pass under the agreement, then the defense of suicide is available in this action. The certificate of insurance provided for the payment to the beneficiary of such an amount as one assessment on the membership would raise, not to exceed one thousand dollars. The evidence does not show what amount one assessment on the membership would raise, and it is contended, that for aught that appears from the record, the sum tendered by defendant may equal or even exceed the amount that would be realized by one assessment. The question before the court for decision cannot be disposed of on probable, or even conceded results, in dollars and cents. It is immaterial for the purposes of the case, whether plaintiff would gain or lose money by accepting the tender. He sues to recover on the certificate and is entitled to judgment thereon, unless the action is barred by the suicide of his father. Hence, the question presented for decision involves the power of defendant to enact the suicide law so as to give it a retrospective operation on the contract of insurance, under the terms of the agreement made at the time the contract was entered into. That the association might, under the agreement with Zimmermann, pass a law and give it a retrospective operation is conceded, provided the law is a just and reasonable one and does not destroy or impair the benefit secured by the certificate. The question, therefore, is narrowed down to this: Was the future adopted suicide law reasonable? The reasonableness of such a law, to operate retrospectively, was passed on by us in the case of Smith v. Supreme Lodge, 83 Mo. App.

512, BOND, J., writing the opinion for the court. In commenting on the agreement of the member to the effect, that his contract should be governed by laws then in force, or that might thereafter be adopted, at page 526, it is said: "The fact that it reserved the right, by the assent of the member, to make future laws obligatory upon him, could not justly be deemed to comprehend the right to abate its debt, for that would *pro tanto* destroy the contract between the parties, and to permit one person to accept the consideration of a debt, and subsequently to deny a material part or all of such debt, would authorize a patent fraud, which the law does not deem to have been within the intent of a mere general agreement for changes in the contract. Such an agreement only contemplates those changes which fairly consist with the full obligation entered into. It does not imply that the obligation itself should be lessened or destroyed at the will or caprice of the obligor, for that would involve injustice to one and ill-design on the part of the other of two parties to a contract." This case is approvingly cited in Knights Templars' & Masons' Life Indemnity Co. v. Jarman, 104 Fed. l. c. 645.

Bacon, in his work on Benefit Societies and Life Insurance, vol. 1, sec. 188a, says: "After a review of most of the authorities, the St. Louis Court of Appeals said: 'The foregoing cases were all decided on the theory that subsequent by-laws, despite the member's agreement to comply with them, cannot defeat or abridge the essential rights created by the policy, but effect only the member's duties as such; not his interests as a contracting party. In all of them we find the same argument here advanced and accepted by some courts, that the business experience of companies shows them what regulations ought to prevail and that it is necessary that they be permitted to avail themselves of the teachings of experience by enacting new regulations, as needed, to bind all members and control all agreements. There is some merit in that

argument and it is pertinent to any legislation respecting contracts. It has not been thought, however, sufficiently meritorious to permit State Legislatures to impair obligations and we think it not sufficiently so to permit insurance societies.'" [Morton v. Supreme Council R. L., 100 Mo. App. 76.] In a footnote the author gives a list of the cases wherein the member was held bound by subsequent laws, and cases wherein the member was held not so bound, and indicates his approval of the latter class. It is impossible to harmonize these cases; such an undertaking would be entirely futile. This court, however, has been consistent in holding, that the benefit contracted for cannot be destroyed or impaired by a subsequently enacted by-law, though the member agreed in advance that his contract should be governed by subsequently enacted by-laws, on the ground that a by-law which impairs the indemnity secured is unreasonable and could not have been in the mind of the member when he entered into the agreement. It seems most unreasonable that the member would agree in advance, that the very thing he was contracting for, to-wit, the benefit to accrue to his beneficiary, might be destroyed or impaired by the opposite party to the contract at any time in the future it might choose to do so, by passing a by-law. It would be extremely difficult, even rash, for the courts to determine in advance or even to classify the by-laws an association may pass which shall have a retrospective operation on the certificate of a member, who had agreed that his contract should be governed and controlled by future enacted by-laws, as well as by existing ones. It is much easier to determine whether or not a particular by-law acts retrospectively on contracts of insurance under such an agreement. According to the decisions in this jurisdiction, such a by-law cannot operate retrospectively, if its effect is to destroy or impair the benefit certificate. This would be accomplished if the by-law enacted a bar to a recovery

on the certificate which did not exist at the time the contract was entered into, and the same result would follow from a by-law extending a bar beyond the period of its limitation at the making of the contract. [State v. Miller, 50 Mo. 199; Tice v. Fleming, 173 Mo. 49, 72 S. W. 689; Chiles v. School District, 103 Mo. App. 240, 77 S. W. 82.] This doctrine is founded on the common-sense idea that the member, in making an agreement that his contract should be controlled by future enacted by-laws, did not contemplate that the very thing he was contracting for, the benefits to accrue, might at the will of the association be destroyed, or impaired, and that a by-law which impairs the benefits to accrue is an unreasonable one. When Zimmermann was received as a beneficiary member, the suicide section of defandant's by-laws was limited to five years. The subsequent by-laws, invoked as a bar to a recovery, extended the bar for all time, thereby erecting a new bar to the action to take effect immediately upon the expiration of the one in force when the beneficiary certificate was issued. Zimmerman lived beyond the five-year period, and but for the after-enacted by-law, suicide was not in the way of a recovery on the certificate. This defense was erected by the after-enacted by-law and, if it be given a retrospective operation, impairs the obligation of the contract. For this reason the by-law is an unreasonable one and therefore constitutes no defense to the action.

The judgment is affirmed. All concur.