## SUPREME CONCLAVE IMPROVED ORDER OF HEPTASOPHS, A Body Corporate, *vs.* ANNIE REHAN.

*Fraternal   Benevolent   Associations:   by-laws;   amendments; vested rights; suicide.*

In the absence of anything to the contrary appearing in the record, it is to be assumed that the by-laws of a benevolent association have been regularly and properly passed in conformity to its constitution and by-laws.                    p. 94

A constitution of a benevolent association with a general power to amend the by-laws does not authorize amendments which impair the vested rights of members.                    p. 95

At the time a certificate of membership in a benevolent association was issued, the rules and regulations contained no restriction as to payments to beneficiaries of a member who died by his own hand; but the application contained the assent of the applicant that he would be bound by the present and future by-laws of the association; after his election a rule was adopted that full payment should not be made to the beneficiary of a member committing suicide, whether sane or insane. *Held,* such a rule is unreasonable and invalid as to the beneficiaries of members who committed suicide while insane.

pp. 103, 106

*Decided December 5th, 1912.*

Appeal from the Court of Common Pleas of Baltimore City (Duffy, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*John C. Tolson* and *Olin Bryan,* for the appellant.

*George Washington Williams* and *John N. Richardson,* for the appellee.

BURKE, J., delivered the opinion of the Court.

On the 10th day of November, 1898, the Supreme Conclave of the Improved Order of Heptasophs, a fraternal beneficiary association (a corporation duly organized and doing business in this State), issued its certificate of membership of John P. Rehan.

The certificate provided for the payment from the benefit fund of the association, under certain conditions hereafter mentioned, of one thousand dollars to his wife, Annie Rehan, the plaintiff in this case and the appellee on this record.

The certificate was issued upon the condition, among others, "that the said member complies in the future with the laws, rules and regulations now governing said conclave and fund, *or that may be hereafter enacted* by the Supreme Conclave to govern said Conclave and fund."

In 1903 the association enacted the following law: "SEC. 257. No benefit shall be paid to the beneficiary or beneficiaries of any member committing suicide (sane or insane). Provided, however, that where such suicide has completed one year of membership (although the Supreme Conclave shall by his act be released from all claims represented by the benefit certificate), his beneficiary or beneficiaries shall, nevertheless, receive from the Supreme Conclave a sum of money in full discharge of all demands, which he, she or they might otherwise have upon said Supreme Conclave, equal to an equitable proportion of the total benefit, such equity to be determined by the number of years the suicide was a mem-

ber of the order, as related to his expectancy of life when admitted."

In the absence of anything to the contrary appearing in the record, we will assume that the law was regularly and properly passed conformably to the Constitution and Laws of the association.

John P. Rehan died on the 6th day of September, 1911. The benefit was not paid, and this action was brought to recover the amount named in the certificate. The case was tried in the Court of Common Pleas, and resulted in a verdict and judgment for the plaintiff for one thousand dollars, and from this judgment the defendant has appealed.

When this certificate was issued and accepted, there was no suicide law of the association in force. The defence relied on was that John P. Rehan committed suicide, and that the law we have transcribed governed the case, and that under that law the plaintiff was entitled to receive only the sum of four hundred and seventy-one dollars, which amount the defendant tendered itself ready to pay.

The plaintiff, however, contends that this after enacted law is not binding upon her, and does not affect her rights under the certificate.

The precise questions presented, which were raised by demurrer to the defendant's fourth and fifth pleas and by the plaintiff's demurrer to the defendant's rejoinder to the replication to the third plea, are these: First: Was it within the power of the defendant by the enactment of this law to reduce the amount payable to her as expressed in the certificate? Secondly: If the by-law is valid and binding upon her, do the defendant's pleadings disclose a defense within its terms?

This is a narrow question, and is one which has not heretofore been passed upon by this Court. It is an important question both to societies of this character and to their members. The trial Court sustained the demurrers, and held that the defendant's pleadings did not disclose a good defense to

the suit. It, however, granted leave to the defendant to plead over within ten days. The defendant declined to plead further, and judgment was entered upon the demurrers in favor of the plaintiff.

There appears to be a general concurrence of authority in support of these two propositions. First, that a general power to amend the laws reserved either by the Constitution or By-Laws of a fraternal benefit society does not authorize an amendment which impairs the vested rights of the members. Secondly, that where a member of a fraternal benefit society agrees in his application for membership to be bound by the rules, or laws then in force, or which might be thereafter adopted, the society, after he has become a member, may enact *reasonable* rules and amendments, and bind him to their observance.

*Brown* v. *Grand Fountain, Etc.,* 28 App. Cases (D. C. 200); *Strang* v. *Camden Lodge,* 64 Atl. Rep. 93; *Lange* v. *Royal Highlanders,* 106 N. W. Rep. 224; *Fraternal Union of America* v. *Zeigler,* 145 Ala. 287; *Court of Honor* v. *Hutchens,* 79 N. E. Rep. 409; *Zimmerman* v. *Supreme Tent,* 122 Mo. App. 591; *Ayres* v. *Grand Lodge,* 188 N. Y. 280; *Sautler* v. *Supreme Conclave,* 72 N. J. L. 325; *Olsen et al.* v. *Court of Honor,* 100 Minn. 117; *Mathieu* v. *Mathieu,* 112 Md. 625.

In *Lange* v. *Royal Highlanders, supra,* the Court said that a member of a fraternal benefit society "who agrees in his application, or has the agreement incorporated in his policy or benefit certificate, that he will comply with the by-laws of the company then in force or thereafter to be adopted, is bound by subsequent by-laws the same as those in force at the time his certificate was issued; provided that such subsequent by-laws are *reasonable in their nature* and are properly adopted in conformity of the rules of the order, and the statutes governing such association."

In *Ayres* v. *Grand Lodge, supra,* the Court said: "An amendment of by-laws which formed part of a contract is an

amendment of the contract itself, and when such a power is reserved in general terms the parties do not mean, as the Courts hold, that the contract is subject to change in any *essential particular* at the election of the one in whose favor the reservation is made. It would be not reasonable, and hence not within their contemplation, at least in the absence of stipulations clearly specifying the subjects to be affected, that one party should have the right to make a radical change in the contract, or one that would reduce its pecuniary value to the other. A contract which authorizes one party to change it in any respect that he chooses would in effect be binding upon the other party only, and would leave him at the mercy of the former, and we have said that human language is not strong enough to place a person in that situation." The two cases from which we have quoted express the practically unanimous view of the Courts upon the two propositions stated.

Although these general principles are well settled, there is a diversity of opinion as to what are reasonable changes or amendments.

Confining our attention to the precise legal question first presented for consideration in this case, viz., the right of the defendant, by the after enacted law transcribed, to reduce the amount payable to the beneficiary named in the certificate—the plaintiff in this case—in the event the insured committed suicide "sane or insane", we find some conflict in the authorities.

In some jurisdictions it is held that a subsequent adopted amendment partially, or totally depriving the beneficiary of rights under the certificate in the event of suicide of the insured while sane or insane, is reasonable and valid.

Other Courts hold that such an amendment is wholly ineffective as to outstanding certificates issued when there was no suicide law in force, notwithstanding the insured had agreed in the contract to be bound by after adopted laws.

In other jurisdictions it is held that such a retroactive law is valid so far as it relates to members committing

suicide while *sane;* but is invalid so far as it attempts to affect the rights of the beneficiary where the member has taken his own life while *insane.* This is the position taken by the New York, Virginia, Minnesota and some other Courts, and is based upon reasons manifestly sound and just to both parties to the contract.

The crucial question in all the cases has been one of construction—the Courts, however, differing upon the reasonableness *vel non* of the new law, and in deciding this question reference has always been had to the nature and purposes of the contract read in the light of the objects of the order. These contracts, like other contracts, confer vested rights and interests upon the member, and it would be most unreasonable and unjust to hold that, under a general reserved power to amend, or upon a general stipulation of the insured that the society might amend, one party to the contract had the power to destroy the rights of the other. Such a construction would put the rights of one party to the contract wholly at the mercy of the other.

In *Olsen* v. *The Court of Honor.* 100 Minn. 117, the insured in his application expressly agreed that he would strictly comply with the constitution, laws and rules in force or thereafter to be enacted or adopted. When the certificate was issued and delivered a by-law of the association then in force provided that: "This order will not pay the benefits of members who commit suicide, whether sane or insane, except it be committed in delirium resulting from illness, or while the member is under treatment for insanity, or has been judicially declared to be insane; but in all cases not within said exceptions the amount of money contributed to the benefit fund by such member shall be returned and shall be paid to the beneficiary out of said fund in lieu of the benefit.

The application for membership contained this provision: "I further understand and agree that the laws of the order now in force, or hereafter enacted, enter into and become a

part of every contract of indemnity by and between the members of the order and govern all rights thereunder."

In the place of the original by-law the association after the issuance of the certificate adopted the following: "If a benefit member commits suicide, whether sane or insane, voluntary or involuntary, there shall be payable to the beneficiaries entitled thereto five (5) per cent. of the face of the certificate for each year he shall have been continuously a member of the society, and after twenty (20) years of continuous membership the certificate shall be payable in full."

The assured committed suicide, and suit was brought upon the certificate by the beneficiary. The trial Court held that the by-law in force when the certificate was issued governed the case, and instructed the jury that the plaintiffs were entitled to recover the full amount named in the certificate, unless the insured committed suicide; but if she did, then the defendant was entitled to a verdict, unless the jury further found that she was at the time under treatment for insanity.

In passing upon this prayer the Court said: "It is the contention of the defendant that it was by virtue of the provisions of the original contract that the society might change its by-laws and that the members should be bound thereby. It is obvious that such a provision must receive a reasonable construction. It would be unreasonable to construe it as giving the society plenary power to change its by-laws in any manner it might elect; for, if such construction were to obtain, then the original contract would be simply one to the effect that the society would pay the beneficiary, in case of the death of a member, in accordance with the terms of the contract or in accordance with such new, other or further contract as it might elect thereafter to make for the parties. It seems clear that where the member— that is, the insured—gives in advance the general consent to a change in the by-laws, and agrees in his certificate to abide by all the laws thereafter enacted by the society, he does not intend thereby that the society shall have the power to impair

in essential particulars the contract for the payment of a specific sum to the beneficiary which it agreed by the certificate to pay; or, in other words, he does not consent that the society may make, without consulting him, a new contract for the parties. It has accordingly been held by this Court in accordance with the weight of judicial authority, that the general-consent and agreement of a member of a mutual benefit society in his application and certificate to be bound by any future changes in the constitution, by-laws and rules of the society that it may enact in the future are subject to the implied condition that they must be reasonable. * * * The precise question in this case is whether the change in by-laws of the society was reasonable whereby it attempted to relieve itself from liability to pay the stipulated benefit when the death of the member resulted from suicide while under treatment for insanity, which it contracted for by its certificate and original by-laws. There are a number of cases which hold, in effect, that a mutual benefit society may legally make such a change in its by-laws, where a general power to change its laws has been reserved. See *Supreme Commandery, etc.,* v. *Ainsworth,* 71 Ala. 436; *Hughes* v. *Wisconsin Odd Fellows Mutual Ins. Co.,* 98 Wis. 292, and *Daughtry* v. *Knights of Pythias,* 48 La. Ann. 1203. The change, however, in the by-laws in the case at bar, is quite as fundamental as the respective changes of *Thibert* v. *Supreme Lodge,* 78 *Minn.* 448, and *Tebo* v. *Supreme Council,* 93 N. W. 513; and unless we overrule those cases we must hold that the change in the by-laws in this case was also unreasonable."

This case and the case of *Plumkett* v. *Supreme Conclave,* 105 Va. 643, *supra,* followed the cases of *Shipman* v. *Protected Home Circle,* 174 N. Y. 398, and *Weber* v. *Supreme Tent, etc.,* 172 N. Y. 490.

In the last cited case, one of the precise questions now under consideration was decided. CHIEF JUSTICE PARKER, speaking for the Court, stated the question and the reasons upon which the decision of the Court permitting a recovery

was rested. This case was directly approved in *Shipman v. Protected Home Circle,* 174 N. Y. 398, in which the Court said that the conclusion reached was not in conflict with the doctrine announced in *Weber's Case, supra,* "for in that case there was a finding that the deceased member took his own life while *insane,* and, as already pointed out, that was a risk which was included in his contract and therefore his beneficiary was entitled to claim the fund.

"At the time Weber joined the order and received his policy," said JUDGE PARKER, "the rules of the defendant and the contract of insurance provided that the contract should be void if the party committed suicide within one year, whether sane or insane. Before Weber's death, defendant undertook to amend its by-laws and rules so as to extend the time from one year to five within which self-destruction, whether the result of an insane act or an intentional one, should operate to destroy the policy; and it insists that the amendment was legally accomplished, and that the self-destruction of the defendant within the five years, although an insane act, operated to deprive this plaintiff of all right of recovery. Plaintiff challenges the alleged amendment and insists that it was not legally accomplished, and hence is not available as a defence. But the disposition which we deem it necessary to make of this appeal renders it unnecessary to pass upon that question, and hence we shall assume without deciding, that defendant took all the steps necessary to bring about this change in its laws. This brings us directly to the question whether defendant had the power by amendment long subsequent to the taking out of the policy by its member, to deprive his beneficiary of all rights under the policy in the event of unintentional self-destruction on the part of the insured; for in the eye of the law the taking of life by an insane person, whether it be his own or that of some other person, is not an act for which he is responsible. In the *Century Dictionary* a suicide is defined to be: "One who commits suicide; at common law, one who, being of the years of discretion and sound mind, destroys himself."

And the act itself is defined to be: "Designedly destroying one's own life. To constitute suicide at common law the person must be of years of discretion and of sound mind." This distinction was evidently in the minds of the draftsmen of the rules of the defendant, for they provided that members who should commit suicide within one year from the time of their admission, whether sane or insane, should not secure to others any benefits from the membership. It was entirely competent, of course, for defendant to provide in the contract between it and its members that there should be no recovery in the event that, within a given period, the insured should take his own life, although insane; and it could as well have provided that the effect of death by consumption should be to avoid the policy, and deprive it of all force; and the same could be said of typhoid fever or any other disease. But it did not see fit to include any of these disease nor even unintentional self-destruction after a period of one year. The query, therefore, is whether one who has become a member of this order, and entered into a contract with it, may be deprived of rights under it by a subsequent amendment of the by-laws providing that unintentional self-destruction shall avoid the policy. It needs no amendment to the by-laws to accomplish that result where a person of sound mind deliberately takes his own life, for in such case, as the Supreme Court of the United States held in *Ritter* v. *Insurance Company,* 169 U. S. 139, it is an implied condition of the policy that an insured will not purposely, when in sound mind, take his own life, but will leave the event of his death to depend upon some cause other than deliberate, wilful self-destruction. So, if the proof were that the defendant, while of sound mind, intentionally took his own life, there could be no recovery, although the policy were silent upon the subject. But unintentional self-destruction, whether due to insanity or accident, after the lapse of a year from the making of the contract, was as much insured against as death from typhoid fever or consumption, and an amendment to its by-laws, providing that the death of an existing

member from any of these causes should render the policy
void, would deprive the party of vested contract rights, an
amendment which effects such a result, we have recently
held, may not be made, because it is an unreasonable amend-
ment, destroying contract rights, instead of regulating the
administration of the corporation and its members within
reasonable bounds. *Parish* v. *New York Produce Exchange,*
169 N. Y. 34. The division line between proper and
improper amendments, and the authorities bearing thereon,
were sufficiently considered in that case. In this one it
suffices in conclusion to say that this defendant cannot by
amendment to its rules, deprive persons already insured, or
their beneficiaries of their rights under contracts of insurance
in the event that death should ensue from specified causes
necessarily insured against by the original contract. This
contract insured Weber against unintentional self-destruc-
tion after one year, and the defendant had not the power to
take away the right thus secured without his consent. As
against him and the beneficiary under his contract, there-
fore, that part of the amendment which provided, in effect,
that self-destruction, *while insane,* within five years from the
date of the policy, should render the policy void, was unrea-
sonable and ineffectual."

In the *Shipman case, supra,* the question was, as one of
the questions is here, as to the binding effect of a new law
upon the wife of a member who had committed suicide while
sane—the member having agreed to be bound by after en-
acted laws of the society—the Court held the by-law valid
so far as it related to members committing suicide while
sane, saying "to the extent that the amended by-law provides
for a forfeiture of contract rights in event of suicide by the
insured *while sane,* it is valid, first, because it invades no
vested right of the insured, and second, because it is a funda-
mental, though unexpressed, part of the original contract
that the insured should not intentionally cause his own
death. If we assume, therefore, that the original contract
and by-laws were silent upon the subject of suicide by the

insured while sane, the amended by-law is valid because there could be no such thing as a vested right to commit suicide, and for the further reason that is nothing more than the written expression of a provision which the law had read into the contract at its inception."

We, therefore, hold upon what we regard as the safer, sounder, and more reasonable rule upon this question, that the after enacted by-law before us is not binding upon the plaintiff, if her husband took his own life *while insane;* but that it is binding upon her, if he committed suicide *while sane.* There is nothing in the case of *Mathieu* v. *Mathieu,* 112 Md. 625, in conflict with this doctrine. That case related to changes in the by-laws invalidating a previous designation of a beneficiary. The Court found the change to have been reasonable upon the facts of the case. After quoting the by-laws and referring to the provisions of the application for membership, the Court, in assigning its reasons for holding the by-laws reasonable, said: "The amended by-laws imposed no hardship upon the member. They gave him the right to make a new designation of his beneficiary, if he desired to do so, in all cases in which the original designation became in-operative by their passage, and also made it lawful for him to redesignate the same beneficiary. It was only in the event of his failure to exercise his right of making a re-designation or a new designation that the funa became payable on his death to the members of his immediate family in the order of precedence under which his widow was first entitled to it."

This brings us to the consideration of the only remaining question: Do the allegations of the defendant's pleadings disclose a defence under the valid and binding provision of this law which we have held to operate upon her rights under the certificate?

There is no allegation that the member was sane or insane at the time he took his own life; nor is it alleged, as it was in *Plunkett's case, supra,* that the deceased "died from the

effects of a pistol wound inflicted by himself with *suicidal intent;* nor, as in *Tisch* v. *Protected Home Circle,* 72 Ohio State, 233, that the death of the insured "was caused by a pistol shot fired purposely by herself with *suicidal intent*" which fact in that case was admitted by the plaintiff; nor is there any allegation that the member intentionally or purposely destroyed his own life.

The defense rests upon the by-law and the *mere* allegation that the member committed suicide. The case of this *appellant* v. *Miles,* 92 Md. 613, shows that this Court has been careful to protect the rights of certificate holders in the defendant association.

In the *Miles case* this Court held that the mere fact that the insured had committed suicide would not bar a recovery under the contract. JUDGE JONES, speaking for the Court, said: "The Court refused to instruct the jury that, notwithstanding, there was no condition in the contract between the defendant and the assured that the defendant should be exempt from liability to pay the insurance to the beneficiary in case the death of the assured occurred by suicide, the plaintiffs were not entitled to recover if the jury found the cause of death to be suicide. We think this ruling is in accordance with what has been the generally accepted doctrine in regard to suicide as a defense in cases the nature of this. In the present case this doctrine was very justly applied. The charter of the defendants stated the object of the incorporation thereunder to be for beneficial purposes and to provide an endowment fund to be paid to the family or friends of a deceased member." Its Constitution described one of the objects of the order to be "to create and maintain by stated and fixed contributions a benefit fund from which, on satisfactory evidence of the death of a member, who has complied with all the lawful requirements of the order, a sum not exceeding $5,000.00 shall be paid to his beneficiary or beneficiaries." The whole spirit and design of the order is, according to its professed object, to

assist members and relieve them in sickness while they live and to provide for the needs of their families and friends in case of their death. Those of the families and friends of the deceased members, who are made the objects of care by the order, but have no more control over the cause of death than have the members of the order. Their need of assistance is the same whatever the cause of death. To refuse them this assistance for a cause over which they have no control would not accord with the expressed objects of the order, and would be contrary to the spirit which professedly prompted its organization."

Had the defendants pleadings showed that the insured while sane had intentionally or designedly taken his own life they would have disclosed an excepted cause of liability within the terms of the by-law.

In *Travelers' Insurance Company* v. *Nicklas,* 88 Md. 470, the provision in the policy upon which the defendant relied was as follows: "If the insured shall die by suicide, whether the Act be voluntary or involuntary, felonious or otherwise, or whether the insured be sane or insane at the time of the Act, then * * * this policy shall be null and void and of no effect, except in the case provided for in the 6th section of his policy."

There was no question of insanity in the case. The evidence showed that the insured was found dead on the floor of his bath-room fully dressed, with a pistol shot wound over his right ear and the pistol on the floor near by.

The Court at the instance of the plaintiff instructed the jury "that where death results from a pistol shot wound self destruction is not to be presumed, but the law presumes the wound was the result of accident, and the burden of proof is upon the defendant to show by a preponderance of testimony the wound was *intentionally self inflicted,* and that it was not the result of accident; and that unless the jury find from the evidence that the insured *intentionally* shot himself, their verdict must be for the plaintiff." This instruc-

tion was approved, the Court saying "we do not understand that it was seriously contended that the propositions of law set forth in this prayer are not sustained by authority."

A full discussion of suicide provisions in policies of insurance, and a review of the decisions upon them may be found in 2 *Bacon on Benefit Societies and Life Insurance* (3rd Ed.).

In section 336 the author says: "To avoid the effect of these decisions it has become customary with life insurance companies to insert in their policies a stipulation that the contract shall be void if the insured shall 'die by suicide, felonious or otherwise,' 'sane or insane,' or 'by suicide, sane or insane.' These conditions have been generally upheld, and successfully eliminate the element of suicide, so that no kind or degree of insanity will prevent the avoidance if the insured had the *intent* to do the Act even though the intent of an unbalanced mind, or realized the physical consequences of his act."

Being of opinion, for the reasons stated, that the defendant's pleadings were insufficient, and that the judgment for the plaintiff was properly entered, it will be affirmed.

> *Judgment affirmed, the appellant to pay the costs above and below.*