## THE ROYAL ARCANUM, A Corporation,

*vs.*

## LOUISA C. VITZTHUM.

*Fraternal or benevolent societies: after-adopted by-laws or rules;*
*effect of—. Disappearance of member.*

In the absence of proof to the contrary, it is to be presumed
that the by-laws of fraternal societies were regularly and prop-
erly passed.                                                    p. 526

Members of fraternal or benevolent societies who agree, in
their applications for membership or otherwise, that they will
comply with the by-laws of the order, then in force or after-
wards to be adopted, are bound by after-adopted rules, provided
the same are reasonable in their nature and properly adopted
according to the law of the order.                             p. 526

A rule providing that registered notice shall be given at the
last known residence of a member who is reported as having
disappeared, and further providing that unless within six
months' from the time of such notice the member shall appear
at a stated meeting of the order he shall be suspended there-
from and from all the rights of the order, is *reasonable*.  p. 528

*Decided May 17th, 1916.*

Appeal from the Superior Court of Baltimore City.
(SOPER, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Andrew C. Trippe* (with whom was *Jas. McC. Trippe* on
the brief), for the appellant.

*Samuel Want,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

Upon the application of William Vitzthum, a certificate of membership in the Royal Arcanum, a fraternal benefit association was, on the 16th day of November, 1889, issued to him. The certificate provided that upon the conditions therein mentioned, his wife, Louisa C. Vitzthum was to be paid at his death, out of the Widows and Orphans Benefit Fund, the sum of three thousand dollars ($3,000).

In his application is found the following clause: I do hereby * * * agree that * * * any concealment of facts by me in this application, *or my suspension or expulsion, from, or voluntarily severing my connection with the order,* shall forfeit the rights of myself and my family, or dependents, to all benefits and privileges therein. I agree to make punctual payments of all dues and assessments for which I may become liable, and to conform in all respects to the laws, rules and usages of the order now in force *or which may hereafter be adopted by the same.*"

The certificate issued thereon contained among others, the provision that the payment to the beneficiary was to be made only "upon condition that said member complies in the future with the laws, rules and regulations now governing said Council and Fund *or that may hereafter be enacted by the Supreme Council to govern said council and fund*" and only "in accordance with and under the provisions of laws governing said fund, upon satisfactory evidence of the death of said member and upon the surrender of said certificate, provided that said member *is in good standing at the time of his death,*" etc.

In 1900 the Supreme Council of the association adopted and enacted the following by-laws:

"Section 400—(1) An officer or member of a Council who has knowledge that a member had disappeared shall at once inform the Council thereof and thereupon report of such disappearance shall be forwarded to the Supreme Secretary, together with the date as nearly as may be determined of the disap-

pearance, the circumstances attending the same, the last address or residence of the member given by him or appearing upon the Collector's Books and of the beneficiary or beneficiaries of such member.

"(2)   The Supreme Secretary shall immediately send by registered mail to such member, at his said address or residence, a copy of this Chapter of the General Laws, making a record of such sending, and mail notice thereof to the Secretary of the Council," etc.

"(3)   A member who shall fail or neglect to furnish to the Council either by presenting himself in open Council at a stated meeting and then and there declaring the same, and having due record made of such declaration, or by writing over his own signature delivered by the Supreme Secretary, his address including both place of business, if any, and his residence, within six consecutive months after date of such mailing to said member by the Supreme Secretary, shall stand suspended from all rights, benefits and privileges of the Order upon and after the date upon which said period of six months expires and no assessments nor dues shall thereafter be received from him or on his account, and no action on the part of said Council or any officer thereof shall be required as essential to such forfeiture and suspension," etc.

We will assume that this law was regularly and properly passed as there is nothing in the record to show that it was not so passed. *Heptasophs* v. *Rehan,* 119 Md. 94.

William Vitzthum on the 26th day of April, 1910, abandoned his business, left his home, wife and family in the City of Baltimore and was not again heard from by them, or his brethren of the association, although diligent efforts were made to discover his whereabouts, until July 20, 1914, when he was found in a hospital in the City of New York where he died a short time thereafter on August 4, 1914. In the meantime in August, 1913, he, pursuant to the by-laws to which we have just referred, had been suspended from all

rights, benefits and privileges of the Order, and from and after such time no assessments were received by the Order.

This suit was brought by the wife, his beneficiary under the aforesaid policy or certificate of membership, to recover the amount named in the certificate. The chief question presented by this appeal, which is raised by the demurrers to the third and fourth pleas, is whether the plaintiff's right to recover was affected by her husband's suspension from the benefits and privileges of the Order under said by-law, when at the time he became a member of the Order there was no by-law permitting or authorizing it to suspend one of its members for the cause mentioned in the subsequently passed by-law.

It will be seen that the question here presented is a narrow one. The facts as we have stated them are in substance those stated in the pleas and were therefore admitted by the demurrers filed to such pleas. The demurrers were sustained by the Court below and the case was then tried upon the remaining pleas, resulting in a verdict for the plaintiff, upon which a judgment was entered.

This Court said in the recent case of *Heptasophs* v. *Rehan, supra,* "that where a member of a fraternal benefit society agrees in his application for membership to be bound by the rules, or laws then in force, *or which might be thereafter adopted,* the society, after he has become a member, may enact *reasonable* rules and amendments, and bind him to their observance." *Arold* v. *Heptasophs,* 123 Md. 678.

In that case this Court quoted with approval from *Lange* v. *Royal Highlanders,* 106 N. W. Rep. 224, where it is said that a member of a fraternal benefit society, "who agrees in his application, or has the agreement incorporated in his policy or benefit certificate, that he will comply with the by-laws of the company then in force or thereafter to be adopted, is bound by subsequent by-laws the same as those in force at the time his certificate was issued; provided that such subsequent by-laws are *reasonable in their nature* and are prop-

erly adopted in conformity of the rules of the Order, and the statutes governing such associations."

We must therefore in deciding the question presented determine whether the by-law here involved is a reasonable one. In *Heptasophs* v. *Rehan,* the fraternal association passed a by-law relieving the order under certain conditions of the payment of any part of the amount named in the certificate, and under other conditions, of the payment of a part only of such amount, where the member, sane or insane, committed suicide. In that case there was no "suicide law" of the association in force at the time the certificate was issued to and accepted by the member, of whom the plaintiff was the beneficiary, and as in this case the question was whether said by-law was a *reasonable* one and binding upon the plaintiff. We there said, in some jurisdictions "it is held that such a retroactive law is valid so far as it relates to members committing suicide while sane; but is invalid so far as it attempts to affect the rights of the beneficiary where the member has taken his own life while insane. This is the position taken by the New York, Virginia, Minnesota and some other Courts, and is based upon reasons manifestly sound and just to both parties to the contract." The Court then, after quoting from some of the cases said: "We therefore, hold upon what we regard as the safer, sounder, and more reasonable rule upon this question, that the after enacted by-law before us is not binding upon the plaintiff, if her husband took his own life while *insane;* but that it is binding upon her, if he committed suicide while *sane.*" In one instance the act was an involuntary one, an act of a mentally irresponsible person, while in the other it was the free and voluntary act of a sane person.

The trouble in cases like the one before us is not in ascertaining the law applicable thereto, but in determining the question whether the new or after enacted law is reasonable. In deciding this question reference should be had to the nature and purpose of the contract read in the light of the objects of the order.

This law imposes no hardship upon the member, nor does it deprive him of any vested right, acquired under the contract with the defendant. It does not prevent him from changing his domicile or abode. He may do so with impunity, but should he disappear from his home and his whereabouts are unknown to the Order, the law is then invoked and if he can not be located within six months from the time when the first effort is made by the Order to so locate him or if he does not comply with the provisions of the by-law within such time, he is suspended from the rights and benefits of the Order. This is not at all inconsistent with his agreement made with the defendant at the time he was admitted into the Order, for at such time he expressly agreed that should he voluntarily sever his connection with the Order that such act of his should forfeit the rights of himself, family and dependents, to all benefits and privileges of the Order.

It can not be successfully contended that, in a practical sense at least, he had not severed his connection with the Order. He had abandoned his business, left his home, and deserted his wife and children, and gone to parts unknown to them, and of whom they heard nothing for more than four years and then only through another notifying them of his illness in a hospital, where he shortly thereafter died. It may also be added that no assessment was paid by him after his disappearance and so far as the testimony adduced in the case discloses, no provision was made by him for the payment of the same. As a reason for the passage of the by-law it is stated in the fourth plea that "the experience of the defendant in the disappearance of its members showed that there was a large and increasing number of such cases involving moral turpitude and conduct unbecoming members of the Order and causing embarrassment in the collection and disbursement of the Widows and Orphans' Benefit Fund out of which benefits are paid; and that these disappearances led to the assertion of claims for benefits against the defendant based upon the presumption of death after seven years

and the payments of such claims under the judgments of the
Courts, or otherwise, did not protect the defendant against a
second claim under the members benefit certificate; and that
the lives of disappeared members did not attain the normal
expectancy of life upon which the table of assessments is
based, and the Widows and Orphans Benefit Fund, out of
which benefits are paid, is impaired thereby, and that said
disappearances are increasing from year to year and the
danger to the security of said fund is annually growing
greater; * * * that in some cases the payment of the dues
and assessments after disappearance becomes a speculative
matter, with the idea that after seven years the full amount
of the benefit may be obtained * * * and that the spirit of
our laws and the fundamental idea of our Order are violated
by those payments by outside parties, which serve in most
cases to keep among our brotherhood an unworthy member,
and in some cases to carry out an unworthy speculation."

The by-law involved in this case we think is not unrea-
sonable and is therefore binding upon the plaintiff. Having
reached this conclusion the demurrers to the pleas in our
opinion should have been overruled, and as the essential facts
in the case, as shown by the evidence taken at the trial are
practically undisputed and are consistent with the statement
of facts contained in the pleas, it will serve no useful pur-
pose to send the case back for a new trial to be determined
upon such facts. We will therefore reverse the judgment
below without granting a new trial. There are other ques-
tions presented by the appeal, but the effect of our ruling
upon the demurrers make it unnecessary to pass upon them.

*Judgment reversed without a new trial, with
costs to the appellant.*